# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
May 31, 2012 Session[1]

## STATE OF TENNESSEE v. MICHAEL FARMER AND ANTHONY CLARK

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. 0806635       John T. Fowlkes, Jr., Judge**

---

**No. W2009-02281-SC-R11-CD - Filed August 22, 2012**

---

During a robbery, one of the defendants shot the victim in the leg. Although the bullet passed through the victim's leg, the wound required minimal medical treatment and did not cause the victim to suffer a loss of consciousness, extreme pain, disfigurement, or impairment. The defendants were convicted of especially aggravated robbery and aggravated robbery. The Court of Criminal Appeals affirmed the convictions. We modify the convictions for especially aggravated robbery to convictions for aggravated robbery because the victim did not suffer a serious bodily injury as required by Tennessee Code Annotated section 39-13-403 (2010) and remand to the trial court for resentencing.

**Tenn. R. App. P. Rule 11; Judgment of the Criminal Court Modified; Case Remanded to the Criminal Court**

SHARON G. LEE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, AND GARY R. WADE, JJ., joined. WILLIAM C. KOCH, JR., J., filed a concurring opinion.

Marty B. McAfee and Gregory Allen, Memphis, Tennessee (on appeal); and Patrick E. Stegall, Memphis, Tennessee (at trial), for the appellant, Michael Farmer.

Tony N. Brayton, Memphis, Tennessee (on appeal); and Diane Thackery, Memphis, Tennessee (at trial), for the appellant, Anthony Clark.

---

[1] Oral argument was heard at American Legion Girls' State at Nashville, Lipscomb University, as part of the Supreme Court Advancing Legal Education for Students project.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Clarence E. Lutz, Assistant Attorney General; and Theresa McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In the early afternoon of March 24, 2008, Terrell Westbrooks and Darnay Taper went to an apartment at Summer Trace Apartments in Memphis to illegally purchase Lortab, a prescription pain medication. When they arrived, a man admitted them into the apartment and then left the room. A few minutes later, the defendants, Anthony Clark and Michael Farmer, burst into the apartment, brandishing handguns and announcing "this is a robbery." One of the defendants struck Taper in the head with his gun. Westbrooks threw some cash at the defendants to distract them, and then he and Taper ran out the apartment's front door. As Taper and Westbrooks were fleeing, one of the defendants took $200 to $400 in cash from Taper's back pocket. Westbrooks heard gunfire, and when he got outside the apartment building, he noticed a hole in his pants and discovered that he had been shot in the upper leg.

After escaping, Westbrooks and Taper called 911. Memphis Police Department officers responded and found the defendants, who matched descriptions given by Westbrooks and Taper, sitting on a guardrail near the apartment complex. An officer patted down Clark and found a loaded .32 caliber Smith & Wesson pistol in his waistband. Farmer confessed that he had robbed Westbrooks and Taper and that he had fired shots at Westbrooks as he ran away.

Following a jury trial from August 31, 2009, through September 3, 2009, the defendants were convicted of the Class B felony of aggravated robbery and the Class A felony of especially aggravated robbery. The trial court sentenced them to serve concurrent sentences of eight years for the aggravated robbery and fourteen years for the especially aggravated robbery. The Court of Criminal Appeals affirmed, rejecting the defendants' arguments that the evidence was insufficient to prove that they actually took money from their victims, that the bullet wound to Westbrooks was insufficient to support an especially aggravated robbery conviction, and that the trial court erred by failing to sentence Farmer as an especially mitigated offender. State v. Farmer, Nos. W2009-02281-CCA-R3-CD, W2009-02283-CCA-R3-CD, 2011 WL 2672008 (Tenn. Crim. App. July 8, 2011).[2] We granted the defendants' applications for permission to appeal to determine whether Westbrooks's

---

[2] By order entered July 8, 2010, the Court of Criminal Appeals ordered the consolidation of State v. Michael Farmer, No. W2009-02281-CCA-R3-CD and State v. Anthony Clark, No. W2009-02283-CCA-R3-CD pursuant to Rule 16(b) of the Tennessee Rules of Appellate Procedure.

gunshot wound constituted a "serious bodily injury" that would support the defendants' convictions for especially aggravated robbery.

Because the defendants were found guilty of especially aggravated robbery, the guilty verdicts replace the presumption of innocence with a presumption of guilt. On appeal, the defendants bear the burden of proving that the evidence was insufficient to sustain the verdict of guilty. State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). The firmly-established standard governing our review requires that "'[w]hen considering a sufficiency of the evidence question on appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.'" Hanson, 279 S.W.3d at 274 (quoting State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007)). All questions as to the credibility of trial witnesses, the weight and value of the evidence, and issues of fact raised by the evidence are resolved by the trier of fact, not this Court, and we may not re-weigh or re-evaluate the evidence. State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003); see also State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) ("The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact."). The standard requires that we consider "whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Hanson, 279 S.W.3d at 274-75. The standard applies whether the conviction was based upon direct or circumstantial evidence. State v. Sutton, 166 S.W.3d 686, 689 (Tenn. 2005) (citing State v. Carruthers, 35 S.W.3d 516, 557 (Tenn. 2000)).

Since the issue before us involves the interpretation of a statute, we apply a de novo standard of review without any presumption of correctness. Lind v. Beaman Dodge, Inc., 356 S.W.3d 889, 895 (Tenn. 2011). The well-settled rules of statutory interpretation dictate that our primary role is to discern and give effect to legislative intent. Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 309 (Tenn. 2008). In reaching that goal, we begin with an examination of the statute's language, Curtis v. G.E. Capital Modular Space, 155 S.W.3d 877, 881 (Tenn. 2005), presuming that the legislature intended that each word be given full effect. Lanier v. Rains, 229 S.W.3d 656, 661 (Tenn. 2007). When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000); see also In re Adoption of A.M.H., 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect.").

There are three gradations of robbery depending on how the crime is committed. "Robbery" is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2010). "Aggravated robbery" is robbery "(1) [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or (2) [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402(a)(1), (2) (2010). "Especially aggravated robbery" is robbery "(1) [a]ccomplished with a deadly weapon; and (2) [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-403(a)(1), (2). Especially aggravated robbery requires proof of both elements: use of a deadly weapon and serious bodily injury to the victim. See Stewart v. State, 33 S.W.3d 785, 792 (Tenn. 2000) ("[S]tatutory phrases separated by the word 'and' are usually to be interpreted in the conjunctive."). There is no dispute that the defendants used a deadly weapon during the robbery; the only issue is whether the gunshot that passed through the victim's leg was a "serious bodily injury."

"Bodily injury" is defined to include "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2) (2010). "Serious bodily injury" is defined as "bodily injury that involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; [or] (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]" Tenn. Code Ann. § 39-11-106(a)(34).

To resolve this issue, we must apply these definitions to the evidence of the injury presented at trial. Westbrooks did not immediately know he had been shot; he discovered it after he got outside the apartment building and noticed he had a hole in his pants. He told the jury that the bullet entered the back of his left leg just below the buttocks and exited the top part of his front thigh. He described his wound as "a straight shot, you know, just tore straight through." Westbrooks testified that once he had escaped the defendants, he sat down on a bench and the "adrenaline was still going, I wasn't feeling as much until I sat down and the blood started kind of flowing then and I could really feel it." He stated that about five minutes after he sat down on the bench, an ambulance arrived, and he was taken to the hospital where he received medical treatment for his wound. He described his medical treatment and recovery as follows:

> A. Basically, . . . I - - when I went to the doctor he said it was a straight, clean wound that went straight through . . . . [h]e cleaned it up real good, . . . took a couple of x-rays and sent me home probably within the hour or so.
>
> Q. Okay. Did you have medication or anything that you were sent home with?

A.  Yeah, just pain relievers.

Q.  Okay.  Were you in pain at that time?

A.  Yes.

. . . .

Q.  Okay.  Were you injured in any other way?

A.  No, ma'am.

Q.  Okay.  You still have problems with the leg?

A.  No, not really.

Factor (B) was not established because there was no evidence that Westbrooks' injury involved any loss of consciousness, much less a protracted loss of consciousness.  Factor (C) was not shown because there was no proof that Westbrooks suffered extreme physical pain.  Admitting to the difficulty of quantifying physical pain in State v. Sims, 909 S.W.2d 46, 49 (Tenn. Crim. App. 1995) our Court of Criminal Appeals applied the ejusdem generis canon of statutory construction, stating that "the enumerated portions of the definition of serious bodily injury should be read as coming from the same class of injuries."  The Sims court concluded that the pain associated with the injury suffered by the victim in that case—a broken nose—is not extreme enough to be included in a class of injury that involves a substantial risk of death, protracted unconsciousness, permanent disfigurement or protracted loss, or substantial impairment of loss of a body part or mental faculty.  Likewise, in the instant case, the evidence does not support a finding that Westbrooks's injury involved a degree of pain that would warrant its inclusion among the other enumerated portions of the definition of "serious bodily injury."  Although Westbrooks testified that he experienced pain after realizing he had been shot, hospital records do not classify his pain as "extreme" but rather as "mild" to "moderate."  Westbrooks was given a prescription for pain medication[3] before leaving the hospital, but he never testified as to the degree of pain he experienced.  A jury could not reasonably infer from Westbrooks's testimony, the hospital records, and the nature of his injury that Westbrooks's wound involved extreme pain.  Factors (D) and (E) were not established because nothing in Westbrooks's testimony supports an inference that his injury involved protracted or obvious disfigurement, or protracted loss or substantial

---

[3] Coincidentally, Westbrooks was prescribed Lortab, the same medication he was seeking to purchase illegally when he was shot.

impairment of a function of a bodily member, organ, or mental faculty. Westbrooks did not testify that he suffered any disfigurement, loss or impairment, and to the contrary, stated that as of the time of trial, he had no problems with the leg. This brings us to the remaining factor, factor (A), which provides that a bodily "injury that involves . . . a substantial risk of death" also qualifies as a serious bodily injury. Tenn. Code Ann. § 39-11-106(a)(34).

The Court of Criminal Appeals in a two-to-one decision ruled that the State presented evidence that would allow a rational jury to find that Westbrooks's injury involved a substantial risk of death, reasoning that although there was no actual serious bodily injury, the bullet

> could easily have punctured or severed the victim's femoral artery or vein, causing the victim to bleed to death. The fact that the bullet somehow traveled entirely through the victim's thigh while missing all of the vital blood vessels contained therein is a serendipitous turn of events for the victim, not the defendants.

Farmer, 2011 WL 2672008, at *5.

We respectfully disagree with this analysis. The statute provides that a serious bodily injury is an "*injury that involves* . . . substantial risk of death." Tenn. Code Ann. § 39-11-106(a)(34)(A) (emphasis added). By the plain meaning of this language, we hold that in determining whether there was a "serious bodily injury" based on a "substantial risk of death," we must look to the injury that occurred rather than the injury that *could* have occurred or the manner in which it occurred. As Judge Tipton correctly observed in his dissenting opinion,

> [e]ssentially, the majority's holding means that the use of a deadly weapon resulting in any injury, because of the weapon's inherently deadly nature, involves a substantial risk of death. This renders meaningless the distinction between aggravated robbery, involving a deadly weapon *or* serious bodily injury to a victim, and the greater offense of especially aggravated robbery, involving deadly weapon *and* serious bodily injury to a victim.

Farmer, 2011 WL 2672008, at *6. Courts from numerous other jurisdictions have held similarly. See, e.g., Goans v. State, 465 So. 2d 482, 482 (Ala. Crim. App. 1985) (holding that a victim who was shot in the collarbone, treated, and released the same day at a hospital, and testified that the pain was "not all that bad," did not sufficiently prove "serious physical

injury," as required under state's first degree assault statute); Luttrell v. Commonwealth, 554 S.W.2d 75, 79 (Ky. 1977) (holding that while a gunshot victim "suffered from his wounds[,] he was not seriously injured in the statutory sense"); Williams v. State, 696 S.W.2d 896, 898 (Tex. Crim. App. 1985) (providing that a "gunshot wound, although caused by a deadly weapon . . . is not, per se, serious bodily injury"). Because in many cases a layperson does not have the necessary medical knowledge to determine whether a particular injury involves a substantial risk of death, expert medical testimony is frequently of critical importance in establishing that fact. The State did not, however, introduce any expert testimony that Westbrooks's injury involved a substantial risk of death, as has been done in other cases where the charged offense required such proof. See, e.g., State v. Thomas, 272 S.W.3d 421, 425 (Mo. Ct. App. 2008); People v. Almonte, 776 N.Y.S.2d 554, 555 (N.Y. App. Div. 2004); Bosier v. State, 771 S.W.2d 221, 223 (Tex. Ct. App. 1989); State v. King, 604 P.2d 923, 926 (Utah 1979).

The State failed to present sufficient proof that the victim suffered a serious bodily injury.[4] For that reason, we conclude that the defendants committed aggravated robbery based on their use of a deadly weapon, but not especially aggravated robbery. We vacate the defendants' convictions for especially aggravated robbery, modify the convictions to convictions for Class B felony aggravated robbery, and remand the case to the trial court for resentencing. Costs of this appeal are taxed to the State of Tennessee.

_____
SHARON G. LEE, JUSTICE

---

[4] There was also no evidence in the present case that Westbrooks would have been at substantial risk of death even had he received no medical treatment. See Janet L. Freeman, State v. Goodwin: Defining Serious Bodily Injury in Aggravated Assault and Kidnapping Cases, 48 Mont. L. Rev. 179 (1987) (discussing whether, in determining whether an injury "creates a substantial risk of death" under Montana law, a factfinder may properly consider that an injury would have been life-threatening without medical treatment).