# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs September 5, 2012

## STATE OF TENNESSEE v. NATHANIEL SHELBOURNE

**Appeal from the Circuit Court of Lake County**
**No. 09-CR-9299    R. Lee Moore, Jr., Judge**

**No. W2011-02372-CCA-R3-CD  - Filed December 26, 2012**

Nathaniel Shelbourne ("the Defendant") was convicted by a jury of intentional or knowing aggravated assault causing serious bodily injury. After a sentencing hearing, the trial court sentenced the Defendant to a term of eight years in the Tennessee Department of Correction, to be served consecutively to his prior sentence. In this appeal as of right, the Defendant claims that (1) the trial court erred in admitting photographs of the victim's injuries; (2) the trial court erred in refusing to charge the jury on the lesser-included offense of misdemeanor reckless endangerment; (3) the evidence is not sufficient to support his conviction; and (4) his sentence is excessive. After a thorough review of the record and relevant authorities, we have determined that the Defendant is not entitled to relief on any of these issues. Accordingly, we affirm the trial court's judgment.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment
## of the Circuit Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J., joined. THOMAS T. WOODALL, J., filed a concurring opinion.

Tracey A. Brewer-Walker, Ripley, Tennessee, for the appellant, Nathaniel Shelbourne.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Philip Bivens, District Attorney General; and Lance Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

The Defendant was indicted in March 2009 for one count of aggravated assault committed in July 2008 in Lake County, Tennessee. At the Defendant's jury trial conducted in September 2011, the following proof was adduced:

David Burkeen, a sergeant at Northwest Correctional Complex, testified that, on July 3, 2008, he just had finished passing out "[c]ommissary" to the inmates. Sgt. Burkeen explained that inmates were allowed to purchase toiletries, snacks, etc., out of monies in their accounts and that these items were known as "commissary." Sgt. Burkeen was in Unit 6, which consisted of sixty-four cells. Thirty of these cells were downstairs, and the remainder were upstairs.

Sgt. Burkeen was standing at the bottom of the staircase that led up to the second floor when he heard Officer Staggs yell, "[H]ey, look!" Sgt. Burkeen looked up and saw an inmate "punching" Officer Miller. Sgt. Burkeen identified the Defendant as the inmate.

Sgt. Burkeen ran upstairs. The Defendant was punching Officer Miller "on top of the head" while Officer Miller was kneeling on the floor and trying to "cover up." Sgt. Burkeen told the Defendant to stop. When the Defendant did not stop, Sgt. Burkeen sprayed him. When the Defendant still did not stop, Sgt. Burkeen "dove for him" and "grabbed him to take him down." At that point, Sgt. Burkeen successfully stopped the Defendant's attack on Officer Miller. Inmates Relations Coordinator Avery arrived and grabbed the Defendant's legs.

Sgt. Burkeen stated that no other inmates were involved in the incident. He also acknowledged that he did not see how the incident began.

Sgt. Burkeen testified that, prior to the incident, Officer Miller appeared to have all of his teeth. After Sgt. Burkeen subdued the Defendant, he saw Officer Miller "coming up and blood was coming out of his mouth." Sgt. Burkeen did not recall whether he noticed that Officer Miller was missing any teeth.

Howard Avery, an Inmate Relations Coordinator ("IRC") at Northwest Correctional, described his job as "a cross between a counselor and an officer." He testified that, on the day in question, the correctional officers had "just finished commissary and they were getting ready to feed chow, which was lunch." As IRC Avery was getting ready to leave Unit 6, he "heard somebody yell that he was – that he was gonna hit him or something like that." As IRC Avery turned to see what was happening, he saw Sgt. Burkeen running up the stairs. As

IRC Avery prepared to follow, he looked up and saw the Defendant "attacking Officer Miller." IRC Avery described the Defendant's actions as "whaling on" Officer Miller, "hitting him, beating him." According to IRC Avery, Officer Miller was lying on the floor and "covering up" by placing his hands over his head.

IRC Avery was about fifteen steps behind Sgt. Burkeen. After Sgt. Burkeen "tackled" the Defendant, IRC Avery grabbed the Defendant by the legs. The men then "flipped [the Defendant] over" and handcuffed him.

IRC Avery stated that he saw no other inmates involved. He did not see or hear Officer Miller provoke the Defendant.

IRC Avery noticed that Officer Miller was bleeding from the mouth and nose. He also noticed that Officer Miller was missing some teeth. He accompanied Officer Miller to the infirmary and subsequently returned to the scene to look for Officer Miller's teeth. He found one and took it to the infirmary.

On cross-examination, IRC Avery acknowledged that he did not see what prompted the Defendant's actions. He did not know what the Defendant was thinking at the time. He admitted that, in a statement he gave to Internal Affairs about the incident, he referred to the Defendant as "a mental case." IRC Avery explained this description as being based on the way the Defendant acted, adding, "he act[s] like a nut." IRC Avery added that he "assume[d]" that the Defendant was being administered medication.

Scott Miller testified that he was a Special Agent with the Tennessee Department of Correction Internal Affairs. He investigated the incident. While interviewing the Defendant, the Defendant explained that he had been "expecting to receive commissary." When he did not, he inquired of Officer Miller as to the reason. The Defendant told Special Agent Miller that, when Officer Miller told the Defendant that he did not know why, the Defendant "just went at" Officer Miller. Special Agent Miller testified that, at the end of the interview, the Defendant "acknowledged that he was sorry for what he did and he hoped the officer was okay because he hit him really hard, was [sic] his exact words." Special Agent Miller stated that the Defendant also said that he hoped Officer Miller got "his attitude straight."

On cross-examination, Special Agent Miller acknowledged that he taped his interview with the Defendant and had reviewed a transcript of the conversation. When given a copy of the transcript and asked at what point the Defendant explained his actions, Special Agent Miller referred to the Defendant's transcribed statement, "I said I sent out a commissary sheet and I just went at him." Special Agent Miller also acknowledged that the Defendant told him, "Man, I'm sorry, I apologize. I was just coming slowly out of my medication." Special Agent Miller also acknowledged that the Defendant had expressed remorse.

Chris Miller, the victim, testified that he was a correctional officer at Northwest Correctional Facility on July 3, 2008. At the time of trial, he no longer was working at the prison but instead was making modified asphalt sealant.

Officer Miller testified that, on the morning in question, "[w]e had just got [sic] through finishing up handing out commissary and was [sic] fixing to start lunch chow." He explained that the distribution of commissary involved releasing a few inmates from their cells at a time and then locking them back up after they had retrieved their items. After commissary was finished, they started releasing a few inmates at a time for lunch. When Officer Miller opened the Defendant's cell, the Defendant approached the door and asked Officer Miller why he did not get his commissary. Officer Miller told the Defendant he would check on it after lunch got started. Officer Miller began walking to the next cell, and the Defendant followed a little behind and to Officer Miller's left. The Defendant did not appear angry or agitated.

As Officer Miller went to open the next cell door, the Defendant struck him in the head, knocking him unconscious and to the floor. When Officer Miller came to, he found himself "on all fours on the ground." The Defendant was still hitting him, on the back of his neck and on his head on both sides. After other officers subdued the Defendant, Officer Miller noticed blood on the floor, wiped his mouth, and stood up. He noticed blood on his hand after wiping his mouth.

Officer Miller went to the infirmary and was given a mirror. At that point, he saw "that these teeth were knocked out and [his] nose [was] busted and [he] had cuts on [his] upper lip area." One of his teeth "was hanging down by the nerve" and part of his gum was missing. The nurse took Officer Miller to the hospital. Officer Miller stated that he got stitches that day and that, later, he received "a bone graph [sic] on the upper jaw . . . where they could have something to put implants into so [he] could have some teeth." Officer Miller testified that it was eight or nine months before his dental procedures were finished. He stated that he experienced pain from the bone "graph" and had to take pain medication. Officer Miller also had to have surgery on his nose.

In conjunction with Officer Miller's testimony about his injuries, several photographs of Officer Miller's mouth, face, and head were admitted into evidence, some taken the day of the incident and some taken a few days later. The trial court overruled the defense objection to these photographs.

Officer Miller stated that he still experienced pain in his mouth and had to "cut . . . everything up in small bite size."

On cross-examination, Officer Miller acknowledged that he had had no previous problems with the Defendant. He also stated that the Defendant seemed to lose control at the time of the beating. Officer Miller also acknowledged that, a few days prior to the instant incident, another inmate had assaulted him and hit him once in the left side of his neck.

On the basis of this proof, the jury convicted the Defendant of one count of intentional or knowing aggravated assault by causing serious bodily injury, a Class C felony. The trial court later held a sentencing hearing. At the sentencing hearing, the Defendant testified on his own behalf. He acknowledged his actions and expressed remorse. The presentence report was admitted into evidence. Medical records detailing the Defendant's mental health history and a forensic psychiatric evaluation also were admitted. At the conclusion of the hearing, the trial court sentenced the Defendant as a Range II, multiple offender to eight years in the Department of Correction, to be served consecutively to his previous sentence. The trial court later overruled the Defendant's motion for new trial, and the Defendant timely perfected his appeal to this Court, challenging the trial court's admission of the photographs; the trial court's refusal to charge misdemeanor reckless endangerment as a lesser-included offense; the sufficiency of the evidence; and his sentence. We will review each of these issues in turn.

## Analysis

### *Admission of Photographs*

Over the Defendant's objection, the trial court allowed the State to introduce five color photographs of the victim's injuries, including three of his open mouth, one of his left cheek, and one of his right neck. The Defendant contends that the trial court erred in the admission of the photographs because the photographs were "unfairly prejudicial and cumulative when supplemented with the victim's own testimony." We disagree.

As our supreme court declared many years ago, "the admissibility of photographs lies within the discretion of the trial court whose ruling in this respect will not be overturned on appeal except upon a clear showing of an abuse of discretion." State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978); see also State v. Banks, 271 S.W.3d 90, app. 168 (Tenn. 2008). We discern no abuse of discretion in the trial court's admission of the challenged photographs.

A relevant photograph is generally admissible, Tenn. R. Evid. 402, unless its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. In a trial for aggravated assault causing serious bodily injury, the State must prove that the victim suffered serious bodily injury. Our criminal code defines serious bodily injury as follows: "bodily injury that

involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(a)(34) (2006).[1] Thus, the State was required to prove, beyond a reasonable doubt, that the Defendant inflicted upon the victim injuries which satisfied one or more of these criteria.

While the victim testified in some detail about the injuries he suffered at the Defendant's hands, he also testified that the injuries to his mouth had been surgically repaired. Accordingly, it was not possible for the jury to observe the full extent of the victim's injuries simply by looking at him at trial. Therefore, the photographs assisted the jury in assessing the injuries about which the victim testified. Moreover, the photographs are not particularly gruesome or offensive. In sum, the admitted photographs were relevant, and their probative value was not substantially outweighed by any of the criteria set forth in Tennessee Rule of Evidence 403. See Banks, 271 S.W.3d at app. 168-69; State v. Matthew A. Webb, No. W2002-03048-CCA-R3-CD, 2004 WL 47092, at *5 (Tenn. Crim. App. Jan. 2, 2004). The Defendant is entitled to no relief on this issue.

*Trial Court's Failure to Charge Misdemeanor Reckless Endangerment*

The Defendant contends that the trial court erred in refusing to charge the jury on the lesser-included offense of misdemeanor reckless endangerment. We hold that any error by the trial court was harmless beyond a reasonable doubt and that, therefore, the Defendant is entitled to no relief on this issue.

We begin by examining the indictment, which provides as follows:

> THE GRAND JURORS of LAKE COUNTY, TENNESSEE, duly empaneled and sworn upon their oath, present that NATHANIEL SHELBOURNE, on or about July 3, 2008, in LAKE COUNTY, TENNESSEE, and before the finding of this indictment, unlawfully and intentionally, knowingly or recklessly, caused serious bodily injury to Chris Miller, in violation of T.C.A. § 39-13-102, *a Class C Felony*, and against the peace and dignity of the State of Tennessee.

(Emphasis added). Initially, we note that this language conflates the elements of two different classes of aggravated assault. A person commits the Class C felony of aggravated

---

[1] The predicate "bodily injury" may consist of "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2) (2006).

-6-

assault when he or she intentionally or knowingly commits an assault and causes serious bodily injury to another. See Tenn. Code Ann. §§ 39-13-102(d)(1), (a)(1)(A) and 39-13-101(a)(1) (2006). A person commits the Class D felony of aggravated assault when he or she recklessly commits an assault and causes serious bodily injury to another. See id. §§ 39-13-102(d)(1), (a)(2)(A) and 39-13-101(a)(1). This latter offense of Class D felony reckless aggravated assault is a lesser-included offense of the former offense of Class C felony intentional or knowing aggravated assault. See State v. Raul T. Garcia, No. E2000-02817-CCA-R3-CD, 2001 WL 856598, at *2 (Tenn. Crim. App. July 31, 2001).

Although the indictment conflated the two felonies, the trial court properly instructed the jury that the two offenses were distinct. In accordance with our supreme court's directive that juries be instructed to consider offenses sequentially from greater to lesser, see State v. Davis, 266 S.W.3d 896, 910 (Tenn. 2008), the trial court charged the jury to first consider the greater offense of intentional or knowing aggravated assault. The trial court also instructed the jury that, if it determined the Defendant to be not guilty of that offense, then it must consider the lesser-included offense of reckless aggravated assault.

Misdemeanor reckless endangerment may be a lesser-included offense of reckless aggravated assault causing serious bodily injury. See W. Mark Ward, Tennessee Criminal Trial Practice, § 26:6 (2012-13 ed.). Under the facts and circumstances of this case, however, even if such a charge was appropriate, the jury would have had the opportunity to consider misdemeanor reckless endangerment only *after* it had first considered the offense of reckless aggravated assault and unanimously acquitted the Defendant of that offense. See Davis, 266 S.W.3d at 910. When the jury has the opportunity to consider an intermediate lesser-included offense – here, reckless aggravated assault – but convicts of the greater offense, a trial court's failure to charge the next lesser-included offense is harmless error beyond a reasonable doubt. See Banks, 271 S.W.3d at 126. Accordingly, the Defendant is entitled to no relief stemming from the trial court's refusal to charge the jury with the offense of misdemeanor reckless endangerment.

*Sufficiency of the Evidence*

The Defendant next challenges the sufficiency of the proof supporting his conviction of intentional or knowing aggravated assault. Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913,

914 (Tenn. 1982). The appellate court does not weigh the evidence anew. Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

As set forth above, the Class C felony of aggravated assault as charged in this case is committed when the accused intentionally or knowingly commits an assault and causes serious bodily injury to another. See Tenn. Code Ann. § 39-13-102(a)(1)(A). Our criminal code defines the relevant culpable mental states as follows:

> "Intentional" refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.

> "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Id. § 39-11-302(a), (b) (2006). As also set forth above, "serious bodily injury" is defined as "bodily injury that involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Id. § 39-11-106 (a)(34).

The Defendant argues that the proof is insufficient to support his conviction of this offense because "there was no testimony from any witness that [he] ever struck the victim in his facial area." We are not persuaded. The proof at trial established that the victim had his front teeth prior to the Defendant's attack on him and that, immediately after the Defendant attacked him, the victim had lost at least one tooth that was found in the vicinity of the attack and that another of the victim's front teeth was "hanging by a nerve." This is

sufficient circumstantial proof to establish that the injuries to the victim's mouth resulted from the Defendant's attack. The Defendant is entitled to no relief on this basis.[2]

The Defendant also argues that the proof is insufficient to establish that he attacked the victim either intentionally or knowingly, referring to his mental health problems and asserting that the witnesses "testified that they did not know what was in [his] mind when the assault occurred." Again, we are not persuaded. The Defendant adduced no expert proof that he was incapable of forming either the intentional or knowing mens rea at the time he attacked the victim. Moreover, the jury had more than enough proof to conclude that the Defendant acted at least knowingly when he asked the victim a question, followed the victim some distance, and then began beating the victim when the victim did not answer the Defendant's question to the Defendant's satisfaction. That none of the witnesses was able to testify as to what the Defendant was thinking at the time does not entitle the Defendant to relief. Our supreme court has long recognized that there is rarely direct proof of an accused's state of mind and that circumstantial evidence thereof may be sufficient. See, e.g., State v. Davidson, 121 S.W.3d 600, 614-15 (Tenn. 2003); see also State v. Inlow, 52 S.W.3d 101, 104-05 (Tenn. Crim. App. 2000) (recognizing that "[i]ntent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act and from all the circumstances of the case in evidence") (citing State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993)). We hold that the proof adduced at trial was sufficient to establish that the Defendant acted at least knowingly when he repeatedly struck the victim about the head. The Defendant is entitled to no relief on this issue.

*Sentencing*

In his final issue, the Defendant complains that the trial court erred in its application of enhancement factors, resulting in a mid-range sentence of eight years, and in ordering the instant sentence to be served consecutively to the Defendant's prior sentence. The State disagrees.

At the sentencing hearing, the presentence report was admitted with insignificant changes by the Defendant. Additionally, the Defendant testified. The Defendant expressed his remorse and asked the judge to consider his mental health problems. The trial court

---

[2] Although not raised as a distinct issue, we also hold that the proof was sufficient to establish that the victim suffered serious bodily injury at the Defendant's hands. See State v. John Wayne Blue, No. 02C01-9604-CC-00124, 1997 WL 284721, at *3 (Tenn. Crim. App. May 30, 1997) (holding that the victim's loss of two teeth "constituted 'obvious disfigurement' within the meaning of 'serious bodily injury'"); see generally State v. Farmer, 380 S.W.3d 96, 100-03 (Tenn. 2012). In this case, the victim required multiple surgeries and testified that he was no longer able to chew normally.

admitted numerous mental health and medical records regarding the Defendant's problems. The trial court thereafter determined that the Defendant was a Range II, multiple offender and that four enhancement factors applied: "(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"; "(11) The felony resulted in death or serious bodily injury, or involved the threat of death or serious bodily injury, to another person, and the defendant has previously been convicted of a felony that resulted in death or serious bodily injury"; "(13) At the time the felony was committed, . . . the defendant . . . [was] [i]ncarcerated in any penal institution on a misdemeanor or felony charge or a misdemeanor or felony conviction"; and "(19) If the defendant is convicted of the offense of aggravated assault pursuant to § 39-13-102, the victim of the aggravated assault was a . . . correctional officer, . . . provided, that the victim was performing an official duty and the defendant knew or should have known that the victim was such an officer or employee." Tenn. Code Ann. § 40-35-114(1), (11), (13)(I), (19) (Supp. 2008). The trial court also applied as a mitigating factor that the Defendant had been "suffering from a mental or physical condition that significantly reduced [his] culpability for the offense." Id. § 40-35-113(8) (2006).

As to its weighing of the various enhancement and mitigating factors, the trial court explained that it was putting more weight on the enhancement factors than on the single mitigating factor because the Defendant "knew exactly what [he was] doing when [he] did it, and [he] knew [he was] attacking a correctional officer, and it was simply because [the victim] had not brought to [him his] commissary which [he] had requested from the commissary." Accordingly, upon taking the mitigating and enhancement factors into account, the trial court sentenced the Defendant to a midrange sentence of eight years.[3] The trial court then ordered that the Defendant serve the instant sentence consecutively to his prior sentence on the basis that the Defendant is a dangerous offender.

While the Defendant complains that the trial court did not sufficiently explain the factual bases for its application of the enhancement factors, the Defendant's actual primary challenge to the length of his sentence is the trial court's refusal to accord more weight to his mental health problems in mitigation. The Defendant also challenges the trial court's order that he serve his sentence consecutively.

Prior to imposing sentence, a trial court is required to consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

---

[3] The Range II sentence for a Class C felony is six to ten years. Tenn. Code Ann. § 40-35-112(b)(3) (2006).

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2006).

The referenced "principles of sentencing" include the following: "the imposition of a sentence justly deserved in relation to the seriousness of the offense" and "[e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs." Tenn. Code Ann. § 40-35-102(1), (3)(C) (2006). "The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(4), (5) (2006).

Our Sentencing Act also mandates that,

In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2006).

Additionally, a sentence including confinement should be based on the following considerations:

>        (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

>        (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

>        (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1).

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing decision." Id. at 709. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts. (2006); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

Initially, we discern no error by the trial court in its findings of fact regarding the enhancement factors. The presentence report reflects that the Defendant has five previous convictions, including two for especially aggravated robbery. The Defendant raised no objection to the accuracy of this information. These prior convictions are sufficient to trigger the applicability of enhancement factor (1). The Defendant's prior convictions for especially aggravated robbery are also sufficient to trigger the applicability of enhancement factor (11). The Defendant's incarceration at the time of the offense was uncontroverted, resulting in the applicability of enhancement factor (13). Similarly, the victim's status as a correctional officer performing an official duty, and the Defendant's knowledge thereof, was uncontroverted, resulting in the applicability of enhancement factor (19).

We also discern no abuse of discretion by the trial court in setting the Defendant's sentence at the mid-range length of eight years. All four enhancement factors relied upon by the trial court clearly are supported by the evidence. The trial court could have imposed the maximum sentence of ten years on the basis of these enhancement factors, but, instead, the trial court ordered the Defendant to serve only eight years after finding that the Defendant's mental health problems established a ground for mitigation. The trial court's imposition of the Defendant's eight-year sentence is in compliance with the Sentencing Act. Therefore, the trial court clearly did not abuse its discretion in sentencing the Defendant to eight years. Accordingly, the Defendant is entitled to no relief as to the length of his sentence.

The trial court also ordered the Defendant to serve the instant sentence consecutively to his previous sentence upon finding the Defendant to be a "dangerous offender." The Sentencing Act contemplates consecutive service of multiple sentences "if the court finds by a preponderance of the evidence that . . . [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4) (2006). In deciding to order consecutive service, the trial court found as follows:

> You are presently serving a pretty substantial sentence for, again, a pretty serious offense. And in looking at your record, the offenses that you have committed are offenses where people get hurt and can get killed and do get hurt; they're very serious offenses. Your rehabilitation does not look good. You've got a fairly long criminal history for a young man your age. Potential for rehabilitation is just simply not there.
>
> . . . .
>
> The sentence will have to be served consecutively. The Court thinks in this situation a consecutive sentence is appropriate. Quite frankly, you're a dangerous offender, and I'm concerned about whether or not you have any regard for hurting someone or for human life. You are a dangerous offender.

The Defendant's argument as to how the trial court erred in imposing consecutive sentencing is limited to the following:

> The Court based its decision to order consecutive sentencing upon its belief that the Defendant was a dangerous offender. However, [the Defendant] would aver that aggravated assault is NOT a dangerous felony as defined in 2008 under T.C.A. 39-17-1324(i)(1) OR under T.C.A. 40-35-120 which defines VIOLENT offenses. Moreover, none of the Defendant's prior

-13-

convictions are included as "dangerous felonies" according to T.C.A. 39-17-1324(i)(1).

This argument completely misapprehends the law regarding the imposition of consecutive sentences. Moreover, the cited statutes are irrelevant to the issue. Therefore, we deem this issue waived. <u>See</u> Tenn. Ct. Crim. App. R. 10(b). Accordingly, the Defendant is entitled to no relief on this basis.

## **Conclusion**

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JEFFREY S. BIVINS, JUDGE