IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 2, 2016

## STATE OF TENNESSEE v. WILLIAM HEATH

**Appeal from the Criminal Court for Shelby County**
No. 13-02933        Chris Craft, Judge
_____

**No. W2015-01837-CCA-R3-CD  -  Filed October 21, 2016**
_____

A jury convicted the Defendant, William Heath, of especially aggravated robbery, aggravated assault, and reckless endangerment. The trial court sentenced the Defendant to a sentence of forty years for especially aggravated robbery after merging the reckless endangerment and aggravated assault convictions into the especially aggravated robbery conviction. The Defendant asserts that the evidence is insufficient to support the convictions. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Ernest J. Beasley (on appeal) and Paul Guibao (at trial), Memphis, Tennessee, for the appellant, William Heath.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

Ms. Wilma Green, the victim, was in her late seventies at the time of the offenses. She testified that the Defendant was a friend of the family and that they had known each other for about forty years. The Defendant visited Ms. Green nearly every day and purchased cigarettes for her regularly because she has limited mobility. In return, Ms. Green would pay for the Defendant's cigarettes.

On the day of the robbery, the Defendant arrived at Ms. Green's house and asked to use the restroom. Ms. Green testified that after the Defendant used the restroom, he entered the kitchen and grabbed a twelve-inch butcher knife. The Defendant then demanded money from Ms. Green. He took money that Ms. Green was carrying in her shirt and stabbed her in the neck with the butcher knife. During the attack, she also received cuts to her hands. Ms. Green testified that after the attack, the Defendant threw her cellular phone into her yard and said he "ought to kill" her to prevent her from reporting him to the police. At trial, Ms. Green identified the Defendant as her attacker.

After the police arrived at the scene, Ms. Green was taken to the hospital for treatment of the stab wound on her neck and cuts on her hands. She remained at the hospital between five and six hours for treatment, and the doctors gave her pain medication and stitches for her neck wound. The attack left her with increased stiffness in her hands and a scar on her neck that she attempted to conceal with a scarf. Ms. Green testified that, at the time of the attack, she was already on disability insurance for a previous work accident that caused stiffness in her hands. She said, however, that she could no longer open cans and lacked any remaining strength after the attack. Photographs of the victim's injuries were introduced, showing that the victim sustained a gaping gash to her neck and wounds to her hands. Photographs of the victim's apparent blood loss were also introduced, showing blood on the victim's couch, remote control, rags, and a pillow.

Officer Charles Wren of the Memphis Police Department testified that he responded on scene at about 11:15 a.m. Upon his arrival, he and other officers began searching for the suspect who was described to him as a man by the name of "Willie," who was wearing a black jacket and blue jeans. The Defendant's mother told Officer Wren that the Defendant was at the home of Ms. Mazie Bradford,[1] a neighbor of the victim. Ms. Bradford then told the police that the Defendant was in her home and gave written consent for the police to search her home. Within fifteen minutes of searching, the police apprehended the Defendant inside her house. The Defendant matched the description of the suspect provided to the police and had blood on his jacket.

Officer Charles Cathey of the Memphis Police Department testified that a butcher knife was found inside Ms. Bradford's house. The knife, however, was never tested for DNA or fingerprints. Another officer, Donald Cummings, testified that forensic testing on the knife was unnecessary because the knife matched the victim's description of the knife used in the attack.

---

[1] The spelling of Ms. Bradford's first name varies in the record. We use the spelling as found in the trial court transcript.

The Defendant was found guilty of especially aggravated robbery, reckless endangerment, and aggravated assault. The trial court merged the reckless endangerment and aggravated assault convictions into the especially aggravated robbery conviction. The trial court sentenced the Defendant to forty years in prison.

## ANALYSIS

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). The appellate court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). Instead, this court affords the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences that may be drawn from that evidence. *State v. Elkins,* 102 S.W.3d 578, 581 (Tenn. 2003). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). The conviction replaces the presumption of innocence with a presumption of guilt, and the accused has the burden of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Especially aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear"; "accomplished with a deadly weapon"; and "[w]here the victim suffers serious bodily injury." T.C.A. § 39-13-401, -403. "Serious bodily injury" includes any "bodily injury that involves: [a] substantial risk of death; [p]rotracted unconsciousness; [e]xtreme physical pain; [p]rotracted or obvious disfigurement; [or] [p]rotracted loss or substantial impairment of a bodily member . . . ." *Id.* § 39-11-106(a)(34). As it pertains to the Defendant's case, "[a] person commits aggravated assault who[] [i]ntentionally or knowingly commits an assault as defined in § 39-13-101, and the assault … [i]nvolved the use or display of a deadly weapon." T.C.A. § 39-13-102(a)(1)(A) (2011). A person commits assault by "[i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another." *Id.* § 39-13-101(a)(1)(2010). A person commits the offense of reckless endangerment by "recklessly engag[ing] in conduct that places or may place another person in imminent danger of death or serious bodily injury." *Id.* § 39-13-103.

The Defendant asserts that the evidence is insufficient to establish that the victim sustained seriously bodily injury as an element of especially aggravated robbery. To this court's bewilderment, the State, in its closing argument, conceded that the only possible theory for "serious bodily injury" available was "substantial risk of death." The State noted that it did not meet the "extreme physical pain" or "protracted unconsciousness" elements because it did not elicit such testimony. The State conceded to the jury that the "protracted or obvious disfigurement" element was not met because the victim's scar on her neck was not shown to the jury. The record, however, reflects that the State established she had a scar on the left side of her neck, which she concealed with a scarf while in public. During the victim's testimony, the trial court noted she demonstrated where the scar was by "exposing the left front of her neck to the jury" and was wearing "a scarf on her neck." Although the victim testified that the attack left her without any remaining strength in her hands, the State dismissed the "substantial impartment of a bodily member" element by concluding that the loss of strength that the victim sustained was "a result of her arthritis and age." This court is bound to review the record in light of the State's theory of the case—substantial risk of death.

In *State v. Farmer*, the Tennessee Supreme Court held that "in determining whether there was a 'serious bodily injury' based on a 'substantial risk of death,' we must look to the injury that occurred rather than the injury that *could* have occurred or the manner in which it occurred." *Farmer*, 380 S.W.3d 96, 102 (Tenn. 2012) (emphasis provided). In *Farmer*, the defendant shot the victim in the upper leg, close to the femoral artery or vein. *Id.* The gunshot wound caused the defendant pain that was treated with pain relievers and caused no other injuries or problems. *Id.* at 101. The Court held that the victim's injury did not rise to the level of "'serious bodily injury' based on a 'substantial risk of death,'" holding that the State had failed to "introduce any expert testimony that Westbrooks's injury involved a substantial risk of death." *Id.* at 102. The Court noted that the statute requires that the injury itself must *involve* a substantial risk of death. *Id.*

The Court emphasized that "in *many* cases a layperson does not have the necessary medical knowledge to determine whether a particular injury involves a substantial risk of death" and that "expert medical testimony is frequently of critical importance in establishing that fact." *Id.* (emphasis added). Justice Koch highlighted in his concurring opinion that "[u]ndoubtedly, there are circumstances in which a juror's 'common-sense understanding' will be sufficient to enable a juror to determine whether a particular injury involves a substantial risk of death…." *Id.* at 104 (Koch, J., concurring).

While the issue is close, we conclude that in viewing the evidence in the light most favorable to the State, the evidence is sufficient to support a jury finding that the victim sustained serious bodily injury that involved a substantial risk of death. *Id.* at 103-04

(Koch, J., concurring) (noting that expert testimony is often helpful "except for injuries that are either so serious or so trivial that a lay person will understand that they either do or do not involve a substantial risk of death"). The Defendant stabbed the victim in the neck with a butcher knife and threw her cellular phone out onto the yard to prevent her from seeking assistance. The victim suffered a large wound to the side of her neck that was treated with stitches and "strong pain medicine." The photographs of the victim's neck injury show that this is not a mere cut; the attack left her with a gaping wound on the side of her neck from a twelve-inch blade. They also show streams of dried blood on the victim's neck and chest originating from her wound. Other photographs show blood stains on the victim's couch and other items in her living room. A gaping neck wound is the type of injury "so serious … that a lay person will understand" that it carries a substantial risk of death. *See id.* After viewing the evidence in the light most favorable to the State, the evidence is sufficient to support the jury's finding that the victim sustained a serious bodily injury as an element of especially aggravated robbery.

The Defendant also asserts that Ms. Green's injuries did not result from the attack. *See State v. Sims*, 909 S.W.2d 46 (Tenn. Crim. App. 1995) (holding that there was insufficient evidence that the loss of the victim's teeth were associated with the attack because pain in her teeth did not result until four to five days after the attack and the doctor that saw her did not believe the pain and attack to be likely related). While the victim acknowledged that she suffered stiffness in her hands prior to the attack, she testified that she experienced further injuries to her hands as a result of the crimes. Moreover, the serious bodily injury element was based on the gaping gash on the side of the victim's neck, and this injury was inarguably the result of the crime. Accordingly, the evidence clearly established that the victim sustained injuries from the Defendant's attack.

We conclude that the evidence is sufficient to sustain the Defendant's convictions for aggravated assault and reckless endangerment. The Defendant used a twelve-inch butcher knife, a deadly weapon, to cause injuries to the victim's hands and neck. The Defendant's attack left the victim bleeding profusely from the side of her neck that required medical attention, including stitches and pain medication. The Defendant further endangered the victim by throwing her cellular phone out of her reach to prevent her from calling for help. After viewing the evidence in the light most favorable to the State, the evidence is sufficient to support the jury's finding that the Defendant committed aggravated assault and reckless endangerment.

## CONCLUSION

Based upon the foregoing reasons, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE