# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs at Knoxville October 15, 2013

## STATE OF TENNESSEE v. CHARLES JUSTIN WOOSLEY

**Appeal from the Criminal Court for Davidson County**
**No. 2012B1289     Mark J. Fishburn, Judge**

———————————

**No. M2013-00578-CCA-R3-CD - Filed November 26, 2013**

———————————

Following a bench trial, the Defendant-Appellant, Charles Justin Woosley, was convicted of domestic assault, a Class A misdemeanor. See T.C.A. §§ 39-13-101, -111 (2010). He was sentenced to ninety days in the county jail, which the trial court suspended and ordered to be served on unsupervised probation. The sole issue presented for our review is whether the evidence is sufficient to support the conviction. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and JEFFREY S. BIVINS, JJ., joined.

Dawn Deaner, District Public Defender; Jeffrey A. DeVasher (on appeal) and Aisha McWeay (at trial), Assistant Public Defenders, Nashville, Tennessee, for the Defendant-Appellant, Charles Justin Woosley.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

Defendant-Appellant Woosley was indicted by the Davidson County Grand Jury for one count of domestic assault in violation of Tennessee Code Annotated section 39-13-111 (2010). Specifically, he was charged with intentionally, knowingly or recklessly causing bodily injury to his wife, Natalie Woosley. See id. § 39-13-101(a)(1) (2010). He waived his right to a jury trial. The following proof was presented at the bench trial.

**Bench trial.**  At approximately 8:30 p.m. on August 30, 2011, Officer Andrew Chouanard of the Metro Nashville Police Department responded to a domestic disturbance call at the 1000 block of Woods Lake Drive in Madison, Tennessee.  Officer Chouanard testified that he and another officer arrived at the residence and found the Defendant-Appellant seated on the front step of the house smoking a cigarette.  While the other officer spoke with the Defendant-Appellant, Officer Chouanard went inside to speak with Ms. Woosley, who had called the police.  During his investigation, Officer Chouanard observed that Ms. Woosley had "some visible red marks on both upper arms and across her chest and she did have a small scratch on her finger."  She reported receiving these injuries during an altercation with the Defendant-Appellant.  In an interview with Officer Chouanard, the Defendant-Appellant acknowledged that there was a disagreement but denied having had any physical contact with Ms. Woosley.

Officer Chouanard described the marks on Ms. Woosley's upper arms and chest as a "red discoloration."  Ms. Woosley had reported to Officer Chouanard that during a struggle between her and the Defendant-Appellant over a set of keys, the Defendant-Appellant wrapped her in a bear hug around her arms and then shoved her down onto the sofa.  Ms. Woosley indicated to Officer Chouanard that she wished to prosecute the Defendant-Appellant for domestic violence and the Defendant-Appellant was arrested.  Officer Chouanard accompanied Ms. Woosley to night court where a domestic violence detective took photographs of her upper chest, arms, and hands.  At the bench trial, Officer Chouanard identified the photographs as depicting Ms. Woosley and her injuries from the night in question.  He also stated that since the photos were taken at 10:15 p.m., nearly two hours after he first observed the injuries, the red marks had significantly faded.  The photos were entered into evidence as a collective exhibit without objection from the defense.  Officer Chouanard then made an in-court identification of the Defendant-Appellant as the person he arrested for the incident.

On cross-examination, Officer Chouanard acknowledged that wedding photographs of Ms. Woosley depicted red marks on her body that appeared similar to the red marks that she had on the night of the domestic disturbance.  He also acknowledged that the Defendant-Appellant told him that night that Ms. Woosley's skin becomes blotchy when she is stressed.  Officer Chouanard stated that the Woosleys' home was not in any kind of disarray and that the couple's two-year-old son was asleep in the home when he arrived.

Natalie Woosley testified that the Defendant-Appellant was her estranged husband and that they were in the midst of divorce proceedings.  She described the events on the night of August 30, 2011 as follows:

We had just put our son to bed and we were in the kitchen having an argument about me moving out that weekend, and he put his hands on my car keys that were on the counter and told me that if I was going to leave I was going to leave then, and that I wouldn't be able to take my son with me. I was not going to leave my son in the house with him because he's got a horrible temper, so I grabbed the keys off the counter and then he put me in the bear hug with my back to him, trying to wrestle the keys out of my hands in the kitchen, and then at some point we moved from the kitchen to the living room and I got turned around and I was pushing on his chest to get him off of me. And then when he finally let go, he put his hand on my chest and just pushed and I fell down onto the couch and I got up and grabbed his cell phone and called the police.

Ms. Woosley testified that she and the Defendant-Appellant had been discussing divorce since spring of that year though papers had not been filed at the time of the incident. According to Ms. Woosley, the Defendant-Appellant had agreed to stay with his mother for the week of August 30 to give the couple some space. Their argument that evening began because the Defendant-Appellant said he was not going to stay with his mother. When Ms. Woosley responded that she was moving out that weekend and taking their son, the Defendant-Appellant became angry. Ms. Woosley did not recall what prompted the Defendant-Appellant to release her from the bear hug and to push her. While she was on the phone with the police, the Defendant-Appellant continued to yell, and then he went outside to smoke a cigarette and to wait for the police.

After the physical altercation, Ms. Woosley said she had red marks on both arms from the elbows up to where the Defendant-Appellant's arms had been. She also reported "a huge red mark" on her chest. According to Ms. Woosley, the photographs taken of her on the night of the incident depicted marks that "had faded quite a bit." She stated that her upper chest becomes flushed from time to time when she is stressed and that the flushing lasts "just a few minutes." Ms. Woosley denied having any skin conditions and said that her arms do not become flushed when she is stressed. That night, she observed "solid red marks" on her arms and distinguished them from the normal flushing that she experiences due to stress. Ms. Woosley reported that her chest and arms "were sore for a few days." She said she was not pursuing the domestic assault charge for any advantage in her pending divorce case.

On cross-examination, Ms. Woosley identified a wedding picture depicting her with redness in her upper chest area. However, she disagreed that her arms appeared red in the picture. The photograph was introduced into evidence. Ms. Woosley reported that during the struggle over her keys, the Defendant-Appellant was attempting to remove her house key off of the ring. According to Ms. Woosley, when she said she would leave and take their

son, the Defendant-Appellant became upset and told her if she was leaving then she would take her car and leave their son with him. The physical struggle lasted for a couple of minutes. While she called the police, the Defendant-Appellant continued to yell at her, but he did not attempt to grab her or the phone. Ms. Woosley testified that the cut on her finger occurred when the Defendant-Appellant tried to wrestle the keys from her grasp "and the keys cut [her] hand when he broke the key ring." She said she broke the Defendant-Appellant's necklace chain while he was holding on to her and, in response, he broke her necklace before letting her go and pushing her down.

Defendant-Appellant Woosley denied ever placing a hand on Ms. Woosley on the night of August 30, 2011. He testified that on the night in question, he had returned from the gym at about 7:30 p.m., and the couple bathed their son and put him to bed. They began discussing their relationship, and Ms. Woosley indicated that she wanted to move out. The Defendant-Appellant said she could leave but requested her house key so that she would not return whenever she pleased. He also did not want Ms. Woosley to take their son until she could provide suitable housing for him. At this point, Ms. Woosley became upset and began yelling at the Defendant-Appellant. The couple had been fighting for the past four of five years so the Defendant-Appellant did not participate in the argument. He was angered when Ms. Woosley said he was a "crappy dad" because he prided himself on being a good father. The Defendant-Appellant testified that when he told Ms. Woosley she was a "crappy wife," she got angry and ripped his necklace off. He responded by reaching for his cigarettes and going to the front porch to cool off. When the Defendant-Appellant stepped back inside, his wife was on the phone with the police reporting that she had been struck and pushed. He denied ever ripping Ms. Woosley's necklace off or engaging in a struggle over her keys. The Defendant-Appellant said Ms. Woosley's entire upper body, including her arms, "will turn red and splotchy" when she is upset. He stated that he had spent the prior nights at his mother's home but returned this particular evening because he wanted to study for a test on the following day and because he missed his son.

On cross-examination, the Defendant-Appellant acknowledged that he returned to the home he shared with Ms. Woosley to study even though a marriage counselor had recommended the day before that the two spend time apart. The Defendant-Appellant denied ever losing his temper. He did not see the cut on Ms. Woosley's finger but surmised that she may have received a paper cut that day at the office where she worked. According to the Defendant-Appellant, Ms. Woosley fabricated her story to the authorities and to the court.

Based on the above proof, the trial court convicted Defendant-Appellant Woosley as charged. The court made the following findings:

I think there was some bear hugging going on that night. . . . I believe when he came back home that night and she couldn't get him to leave and she decided to leave and went for the keys, knowing that she was also going to get her son, then he got upset, grabbed her to try and get the keys, the house key away from her, the keys in general away from her, certainly I don't think he intended to harm her or injure her or anything else, and I'm not sure quite frankly about the red marks. I believe a scratch occurred during the course of the struggle that was precipitated by him, and her testimony was also that her shoulders and upper arms were sore for a couple of days, so that meets the definition of bodily injury. I do agree that it's reckless. It wasn't intended or anything else. I don't think that Mr. Woosley is prone to violence or otherwise has a temperament to intentionally want to hurt Ms. Woosley or anybody else, but I think there was a struggle on that occasion, and it was precipitated by the fact that he moved back in . . . it was clear that one of them needed not be there that night, and when she decided she was going to leave if he didn't, it upset him when she went for the keys and he tried to stop it, so I find that the State has established beyond a reasonable doubt that there was a struggle and that there was bodily injury, more in terms of the pain. I'm not sure about the redness, I don't know what caused it, it could have been either way. I can't find that he caused that as part of the struggle, but she did have [a] scratch on her finger and she did have pain for several days after the incident.

The Defendant-Appellant received a sentence of ninety days to be served on unsupervised probation. He then filed this timely appeal.

## ANALYSIS

On appeal, Defendant-Appellant Woosley contends that the evidence is insufficient to support his conviction for domestic assault. Specifically, he argues that the State has failed to prove the element of "bodily injury" beyond a reasonable doubt. He maintains that there was insufficient evidence to establish that Ms. Woosley experienced "physical pain" as included in the statutory definition of "bodily injury." The Defendant-Appellant claims that the evidence at best may support a finding of "some lingering discomfort" but not of the requisite "physical pain" to sustain the conviction. In response, the State argues that any reasonable fact-finder could conclude that the Defendant-Appellant assaulted his wife and caused injury to her arms and chest. We conclude that the evidence is sufficient to sustain the Defendant-Appellant's conviction.

It is well established law that the State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence.

State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

"In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 313 S.W.2d 451, 456-58 (Tenn. 1958)). However, "[t]he jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable, 313 S.W.2d at 457). This court may not substitute its inferences for those drawn by the trier of fact in cases involving circumstantial evidence. State v. Sisk, 343 S.W.3d 60, 65 (Tenn. 2011) (citing State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010)). We note that the standard of review "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Hanson, 279 S.W.3d 265, 275 (quoting State v. Sutton, 166 S.W.3d 686, 689 (Tenn. 2005)); State v. Carruthers, 35 S.W.3d 516, 557 (Tenn. 2000). The court in Dorantes specifically adopted the standard for circumstantial evidence established by the United States Supreme Court in Holland:

"Circumstantial evidence . . . is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

Dorantes, 331 S.W.3d at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)).

Domestic assault is an "assault" committed against a "domestic abuse victim." T.C.A. § 39-13-111(b) (2010). As charged in the indictment, an assault occurs when a person "[i]ntentionally, knowingly, or recklessly causes bodily injury to another[.]" Id. § 39-13-101(a)(1) (2010). A "domestic abuse victim" is defined to include "[a]dults . . . who are current or former spouses." Id. § 39-13-111(a)(1) (2010). "Bodily injury" is statutorily defined to include "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty[.]" Id. § 39-11-106(a)(2) (2011). In the case sub judice, the trial court considered the evidence and found that the Defendant-Appellant held Ms. Woosley in a bear hug and engaged in a struggle over her keys. The trial court found that during the course of the struggle, the Defendant-Appellant recklessly caused bodily injury to Ms. Woosley in the form of a scratch on her finger and pain in her shoulders and upper arms for a few days following the altercation. The court did not find that the Defendant-Appellant caused the red marks on Ms. Woosley's body.

In challenging the sufficiency of the evidence, the Defendant-Appellant contends that the State failed to establish beyond a reasonable doubt that Ms. Woosley suffered bodily injury. Citing to State v. Sims, 909 S.W.2d 46 (Tenn. Crim. App. 1995), and State v. Farmer, 380 S.W.3d 96 (Tenn. 2012), the Defendant-Appellant argues that this court is required to quantify pain and that the record does not indicate that Ms. Woosley experienced any degree of physical pain.

In Sims, this court recognized "the difficulty of quantifying or measuring pain" and concluded that evidence of a broken nose was insufficient to constitute "extreme physical pain" within the statutory definition of "serious bodily injury." Sims, 909 S.W.2d at 49. Accordingly, the defendant's conviction for especially aggravated robbery was modified to aggravated robbery. Id. at 50. In Farmer, the supreme court held that evidence of a gunshot wound was insufficient to establish "extreme physical pain" and to constitute "serious bodily injury" where the bullet passed through the victim's leg and hospital records classified the

pain as "mild" to "moderate." Farmer, 380 S.W.3d at 101. We respectfully disagree with the Defendant-Appellant that the holdings in Sims and Farmer require this court to quantify pain. On appeal, we are required to review the evidence in the light most favorable to the State and determine whether any rational trier of fact could find the elements of the crime beyond a reasonable doubt. See Jackson, 443 U.S. 307 at 319; see also Tenn. R. App. P. 13(e) . We do not resolve questions of witness credibility and factual issues, nor do we re-weigh or re-evaluate the evidence. See State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003) (citing Bland, 958 S.W.2d at 659). We also decline to substitute our inferences for those drawn by the trier of fact. See State v. Ross, 49 S.W.3d 833, 845 (Tenn. 2001) (citing State v. Pike, 978 S.W.2d 904, 914 (Tenn.1998)).

Here, the trial court considered the testimony and accredited Ms. Woosley's account of the altercation, as was its prerogative. The trial court resolved all apparent inconsistencies in favor of the prosecution's theory, finding that the Defendant-Appellant did in fact cause bodily injury to Ms. Woosley on August 30, 2011. See Bland, 958 S.W.2d at 659; see also Carruthers, 35 S.W.3d 516, 557-58. It is well-established law that a victim's testimony, by itself, is sufficient evidence to support a conviction. See e.g., State v. Wyrick, 62 S.W.3d 751, 767 (Tenn. Crim. App. 2001) ("Generally, a defendant may be convicted upon the uncorroborated testimony of one witness."). The plain language of the statute defines "bodily injury" to include "a cut . . . and physical pain[.]" T.C.A. § 39-11-106(a)(2) (2011). Ms. Woosley testified that she suffered a cut on her finger in the struggle over her keys. She also reported feeling sore in her chest and arms after the altercation. The Defendant-Appellant concedes that Sims and Farmer involve a higher category of pain and concern "serious bodily injury" based upon "extreme physical pain." Although the Defendant-Appellant classifies Ms. Woosley's soreness as "general lingering discomfort" insufficient to constitute "physical pain," we conclude that such a determination goes to the weight of her testimony, which is a matter for the trier of fact to resolve. Viewed in the light most favorable to the State, the evidence was sufficient for the trial court to reasonably infer that Ms. Woosley experienced physical pain as a result of the Defendant-Appellant's actions. We conclude that the evidence is sufficient to support the Defendant-Appellant's conviction for domestic assault beyond a reasonable doubt. Accordingly, he is not entitled to relief.

## CONCLUSION

We conclude the evidence is sufficient to sustain the conviction for domestic assault. The judgment of the Davidson County Criminal Court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE