# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 25, 2014 Session

## STATE OF TENNESSEE v. RONALD L. CARROLL and JOHN BOYDE COLLETT

**Appeal from the Criminal Court for Claiborne County**
**No. 2010-CR-771      E. Shayne Sexton, Judge**

---

**No. E2013-01781-CCA-R3-CD - Filed April 30, 2014**

---

Appellants Ronald L. Carroll and John Boyde Collett[1] stand convicted of especially aggravated robbery. The trial court sentenced Appellant Carroll to serve fifteen years as a violent offender and sentenced Appellant Collett to serve seventeen years as a violent offender. On appeal, the appellants argue that (1) the evidence was insufficient to support their convictions for especially aggravated robbery; (2) the victim's coaching of an essential witness should have resulted in a mistrial; and (3) the prosecutor violated the appellants' right to remain silent during closing arguments. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

James D. Estep, III (on appeal), Tazewell, Tennessee; and Thomas Eikenberry (at trial), Knoxville, Tennessee, for the appellant, Ronald L. Carroll.

Mark Blakley, District Public Defender; and Matthew McClung (on appeal) and Robert Scott (at trial), Assistant District Public Defenders, Lafollette, Tennessee, for the appellant, John Boyde Collett.

---

[1] Several documents in the record indicate the spelling of Appellant Collett's name as "John Boyd"; however, it is the policy of this court to style the case based on the indictment, which in this case spells Appellant Collett's name as we have done.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Lori Phillips-Jones, District Attorney General; and Jared Effler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Facts

This case concerns the June 22, 2010 especially aggravated robbery of the victim, Norman Alan Meyers, at his home in Claiborne County. At trial, Sherry Huff testified that she lived across the street from the victim and his wife. She recalled seeing two men sitting in a "two-tone color pickup" truck parked outside of the victim's house on June 22, 2010. Later in the day, Mrs. Huff saw the same men walking on the victim's property.

The victim's wife, Sharon Meyers, testified that both appellants came to her house on June 22, 2010. She and her eleven-year-old grandson were alone in the house. Mrs. Meyers said that the appellants knocked on the door, but she did not open the door. The appellants left but returned later in the day. They again knocked on the door. When she did not answer, they went to sit in their truck, which she described as "two-tone." Fifteen to twenty minutes later, the victim returned home. Mrs. Meyers testified that soon thereafter, her grandson (who had been playing outside) ran inside and told her, "'[T]hose men are fighting Papaw [the victim], and he's bleeding.'" Mrs. Meyers went outside and observed Appellant Carroll sitting in the driver's seat of the truck and Appellant Collett leaving the victim's garage carrying a shovel. Appellant Collett put the shovel, which Mrs. Meyers had never seen before, in the back of the truck, and the two men left. Mrs. Meyers found the victim standing in the garage. She testified that "his face was all bloody." Mrs. Meyers said that her daughter called for an ambulance and for police. The ambulance arrived ten minutes later. On cross-examination, Mrs. Meyers testified that the victim told her that Appellant Collett hit him with the shovel.

The victim testified that he saw Appellant Carroll at his house when he returned home from picking up his son-in-law after work on June 22, 2010. He talked to Appellant Carroll for a few minutes in his garage, and Appellant Carroll asked to borrow money from the victim. The victim explained that he had previously loaned money to Appellant Carroll, but on June 22, he did not have extra money to give him. They left the garage, and the victim "felt a thump at the back of [his] head." He turned around and saw Appellant Collett with a raised shovel. Appellant Collett hit him in the head with the shovel, which knocked him back into Appellant Carroll. The victim said he and Appellant Carroll "bumped heads." Appellant Carroll "put his arms around" the victim, causing him to be unable to move. The victim testified that Appellant Carroll told Appellant Collett to take the victim's wallet. He

-2-

did so, and then the men dragged the victim into the garage. The victim testified that appellants threw him in the corner of the garage "and started stomping [him], kicking [him]." The victim said that he was calling for help and heard his grandson run into the garage. The next thing that he remembered was waking up at the University of Tennessee hospital "two or three days later."

The victim testified that his lungs collapsed as a result of the attack and that seven to eight staples were required to close the laceration on the top of his head. He also had multiple bruises. He missed two weeks of work. The victim further testified that he had $377 in the wallet taken by appellants. He said that he felt pain as a result of the attack and agreed that the pain lasted "[f]or days after." The victim stated that he "could[ not] hardly breathe" afterwards. As of the time of trial, August 2012, he still suffered from dizzy spells, which he did not have before the attack, and had a "pump knot" on his head. The victim claimed that he was not "pain free" at the time of trial and that he was still seeing a doctor for the pain. He explained that he had a hernia in his kidney and bowels. The victim said that he did not recover his wallet until the day of the preliminary hearing in this case. On that day, he learned that someone had thrown an item into his truck bed while he was inside the courthouse, and he discovered that the item was his wallet. The wallet was wet and muddy.

On cross-examination, the victim denied coming home earlier on the day of the attack. He also denied speaking with Appellant Carroll by telephone that day. The victim testified that he had no memory of speaking with the 9-1-1 dispatcher after the incident. After counsel played the 9-1-1 recording for the jury, the victim agreed that he had spoken with the dispatcher. He explained that some of the things he said on the recording actually referred to events that happened two weeks prior to the incident. The victim testified that other things he said were not true but that he only said them because he was addled after being hit with a shovel.

Captain David Honeycutt of the Claiborne County Sheriff's Office testified that he and Detective Anthony Veighon responded to an assault call at the victim's house on June 22, 2010. From canvassing the neighborhood, he received information about the suspects' being in an older-model truck and having been near a specific wood pile. He collected a beer can and an "alcohol swab," described as being similar to the cloth part of a band-aid, from the area near the wood pile. Both were later sent to the Tennessee Bureau of Investigation's ("TBI") crime laboratory. Captain Honeycutt testified that the victim's garage showed evidence of a struggle and that there were blood droppings on items in the garage. He said that law enforcement collected buccal swabs from both appellants after taking them into custody, which were also sent to the crime laboratory. Captain Honeycutt testified that Appellant Carroll gave a statement to him and Detective Veighon on June 23, 2010. Appellant Carroll told them:

At approximately 3:30 p.m., I went to Alan's [the victim's] house and saw him for about 15 minutes, and Alan said he had to go pick up his son-in-law. I left[,] went across from Forge Ridge and got some drinking water and then went back toward J.S. Auto and called Alan once on my phone and had service, and Alan said, just go to my house and wait on me, so I went back to Alan's house and waited. I waited about 30 to 40 minutes[;] then Alan came home from picking up his son-in-law.

The son-in-law and Alan's daughter went to their home[,] and Alan came over. We went into his garage. At that time, Alan said he was missing his wallet and pills. Alan stated -- started to get upset[,] and that was when he hit me on the left side of my head with a shovel, and I hit the ground. When I got up, I took the shovel from Alan, and I hit him with the shovel one time[,] and he fell. I threw the shovel down, and he started cussing me and went to get his son-in-law and told him to get a gun. At that time, I got in my truck, and the son-in-law came out with a baseball bat. And I told him, I will run over you if you come over here. At that time, me and John left and went straight home.

Captain Honeycutt testified that during the interview, he observed a small abrasion on Appellant Carroll's head, a photograph of which was entered as an exhibit. He had no knowledge of whether Appellant Carroll received medical attention.

TBI forensic scientists testified that Appellant Carroll's DNA was found on the alcohol swab collected from the victim's property. They further testified that there was insufficient DNA on the beer can to create a DNA profile and that there were no identifiable latent fingerprints on the beer can.

Paramedic Gregory Lynn Fultz testified that he responded to the victim's home on June 22, 2010. When he arrived, he observed the victim, who had blood on him, and another individual standing outside, and the individual helped the victim walk to the ambulance. The victim stepped inside the ambulance and sat down. Mr. Fultz testified that he tried to stop the bleeding and assessed the victim for further injuries. The victim had two wounds, one on top of his head and another on the back. Mr. Fultz said that he asked the victim questions to assess his mental status. The victim was "slow to answer questions." He knew his name but could not remember his birth date. Mr. Fultz agreed that in his assessment, the victim's injuries were serious because "[a] normal person . . . should know [his] birthday." Mr. Fultz "determined that [the victim] needed to go to a level one trauma center" because the local facilities were "not equipped to handle a neurologic deficit such as the memory loss." Mr. Fultz transported the victim to a helicopter landing zone in Harrogate so that a helicopter

could take him to the University of Tennessee Hospital in Knoxville. Mr. Fultz testified that on the way to the landing zone, the victim "lost consciousness." The victim regained consciousness after Mr. Fultz applied a painful stimulus to his sternum, but the victim was still incoherent. Mr. Fultz testified that in his opinion, the victim's health deteriorated during the transport. On cross-examination, Mr. Fultz testified that the victim was unconscious for "[a] matter of seconds."

The victim's grandson, R.G.,[2] testified that he was eleven years old at the time of the trial. He said that he was at his grandparents' house on June 22, 2010. R.G. testified that when the victim returned home on June 22, the victim went into the garage with the appellants. R.G. identified the appellants in the courtroom. R.G. said that he heard the victim scream, so he "peeked in the door[,] and they were beating on him." R.G. said that the victim was lying down and crying while the appellants were "stomping on him." R.G. went inside the house and told his grandmother what was happening. Then, he saw the appellants leave in a Dodge truck. On cross-examination, R.G. clarified that he saw Appellant Collett sitting near a wood pile while he and Appellant Carroll waited for the victim. He did not actually see Appellant Collett go inside the garage when the victim and Appellant Carroll did because R.G. had gone behind the garage to play after that point. Following R.G.'s testimony, the State rested.

On behalf of Appellant Collett, both of his parents testified that he had been at their house between the time of the incident and when they drove him to the sheriff's office on June 24, 2010. They also testified that while they were at the courthouse on the day of the preliminary hearing, neither they nor either of the appellants ever left the building while the victim was also there.

After the close of proof and deliberations, the jury found both appellants guilty of especially aggravated robbery. The trial court sentenced Appellant Carroll to serve fifteen years as a violent offender and Appellant Collett to serve seventeen years as a violent offender. The trial court denied the appellants' motion for new trial, and this appeal follows.

## II. Analysis

### A. Sufficiency of the Evidence

The appellants argue that the evidence was insufficient to sustain their conviction for especially aggravated robbery. Specifically, they contend that the victim did not suffer

---

[2] It is the policy of this court to protect the identities of minor witnesses, so we will refer to this witness by his initials.

serious bodily injury. The State responds that the evidence was sufficient, and we agree with the State.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain their convictions for especially aggravated robbery, the State had to prove that the appellants committed a robbery with a deadly weapon and that the victim suffered serious bodily injury. Tenn. Code Ann. § 39-13-403(a). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). "Serious bodily injury" is bodily injury that involves substantial risk of death, protracted unconsciousness, extreme physical pain, protracted or obvious

disfigurement, or the protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. *Id.* § 39-11-106(a)(34).

The appellants only challenge whether the victim suffered serious bodily injury. Therefore, we must apply the statutory definition of serious bodily injury to the evidence of the victim's injuries presented at trial. *See State v. Farmer*, 380 S.W.3d 96, 101 (Tenn. 2012). Viewed in the light most favorable to the State, there is evidence to support several of the section 39-11-106(a)(34) factors for serious bodily injury. However, the strongest support is for the victim's protracted unconsciousness. "Protracted" in this context means "delayed or prolonged in time." *State v. Derek Denton*, No. 02C01-9409-CR-00186, 1996 WL 432338, at *5 (Tenn. Crim. App. Aug. 2, 1996) (citations omitted). Appellants argue that the victim did not experience protracted unconsciousness based on the testimony of the paramedic, who said that the victim was unconscious for "a matter of seconds." In support, Appellant Carroll points to this court's opinion in *David Earl Scott*, in which this court held that the victim's testimony that she was not unconscious for a long period of time did not support a conclusion that she suffered protracted unconsciousness. *See State v. David Earl Scott*, No. E2011-00707-CCA-R3-CD, 2012 WL 5503951, at *6 (Tenn. Crim. App. Nov. 2, 2012), *perm. app. denied* (Tenn. March 5, 2013). In contrast, the victim in this case stated that he awoke in the hospital two to three days after the attack. While the paramedic testified that the victim regained consciousness when a painful stimulant was applied, he also testified that the victim remained incoherent and that his condition continued to deteriorate. This is not a situation where the victim was restored to full consciousness after only a matter of seconds. This case is more like *Bill Nelson Narrimore*, in which this court held that the victim's testimony that he did not remember anything from the time he was hit in the head until he was in a helicopter en route to a hospital satisfied the protracted unconsciousness factor for serious bodily injury. *State v. Bill Nelson Narrimore*, No. 03C01-9308-CR-00276, 1995 WL 10337, at *3 (Tenn. Crim. App. Jan. 11, 1995). Another similar case is *Steven Shane Neblett*. *State v. Steven Shane Neblett*, No. M2011-02360-CCA-R3-CD, 2012 WL 4841322 (Tenn. Crim. App. Oct. 9, 2012), *perm. app. denied* (Tenn. Jan. 17, 2013). In *Neblett*, the victim "was in and out of consciousness and had no memory after being hit until the following morning. Further, he said he suffered memory problems as a result of the blows." *Id*. at *11. Thus, we conclude that the evidence in this case established that the victim suffered from protracted unconsciousness.

Furthermore, there is ample additional evidence in the record from which the jury could find that the victim received serious bodily injury. The record showed that the victim was hit in the head twice with a shovel and was kicked in the torso multiple times. The victim's head injury caused him to suffer some mental impairment, as shown by his being unable to remember his birth date when the paramedic assessed his condition and his responses to the 9-1-1 dispatcher. Moreover, the paramedic believed the victim's injuries

to be severe enough to justify flying him to a trauma center. The laceration on top of the victim's head required seven to eight staples, and he said that he still had a "pump knot" on his head, two years later. The victim also testified that he suffered from collapsed lungs and damage to his kidneys and bowels as a result of the kicking. He said that he suffered from dizzy spells and that he was still being treated for pain at the time of trial. He could not return to work for two weeks after the attack. Therefore, we conclude that there was sufficient evidence for the jury to have found that the victim suffered a serious bodily injury. Accordingly, the appellants are without relief as to this issue.

## B. Violation of Witness Sequestration Rule

The appellants contend that the victim impermissibly coached his grandson, R.G., to testify that the appellants kicked him and stomped on him. The appellants raised this issue in their motion for new trial and attached affidavits from Appellant Collett's parents attesting that they witnessed the coaching. However, the trial court's order denying the motion for new trial does not address the sequestration issue, and the appellants have failed to include the transcript of the motion for new trial hearing in the appellate record. It is the duty of the appellant to prepare a record which conveys "a fair, accurate and complete account of what transpired with respect to the issues which form the basis of the appeal" and will enable the appellate court to determine the issues. Tenn. R. App. P. 24(a). Without the hearing transcript, the record is not sufficient for this court to review the issue.[3] The appellants have therefore waived this issue.

## C. Comment on Appellant Carroll's Right Not to Testify

Both appellants contend that the State improperly commented on Appellant Carroll's right not to testify during its closing rebuttal argument. The State responds that the comments made were not error and that if this court determined that the comments were made in error, then the error was harmless beyond a reasonable doubt.

Both the federal and state constitutions protect a defendant's right to remain silent. *See* U.S. Const. Amend. 5; Tenn. Const. Art. 1, § 9. "It is never proper for a prosecuting attorney to comment upon a defendant's decision not to testify." *State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999) (citing *Griffin v. California*, 380 U.S. 609 (1965)).

---

[3] We recognize that affidavits attached to motions for new trial are to be considered evidence by the trial court. *See* Tenn. R. Crim. P. 33(c). However, the trial court is also free to consider the affidavits "incredible" and to order an evidentiary hearing on the issue. *See* Tenn. R. Crim. P. 33, Advisory Comm'n Cmt. In this situation, we conclude that it would be inappropriate for this court to rely on the affidavits as evidence on appeal of what occurred in the trial court.

Such comments constitute reversible error unless this court concludes that the error was harmless beyond a reasonable doubt. *State v. Hale*, 672 S.W.2d 201, 202-03 (Tenn. 1984). This court must consider five factors to determine whether the comments had a prejudicial effect on the verdict, requiring reversal:

> "(1) the conduct complained of in light of the facts and circumstances of the case;
>
> (2) the curative measures undertaken;
>
> (3) the intent of the prosecutor in making the improper remarks;
>
> (4) the cumulative effect of the improper conduct and any other errors in the record;
>
> (5) the relative strength or weakness of the case."

*Thornton*, 10 S.W.3d at 235 (quoting *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)).

The record shows that the trial court instructed the jury prior to closing arguments about the appellants' right not to testify and that their not testifying could not be held against them. The State made no mention in its initial closing argument about the appellants' not testifying. In Appellant Carroll's closing arguments, defense counsel questioned whether the State introduced DNA evidence to cover up a weak case. In rebuttal, the prosecutor addressed the purpose of the forensic evidence, and the following exchange occurred:

| | |
|---|---|
| State: | We introduced the DNA evidence because we never know what the defendants are going to say at trial. Now, Mr. Carroll chose not to testify[,] which is his absolute right. |
| Defense: | Objection, your Honor. |
| Trial Court: | Continue. Ladies and gentlemen, as long as it's a proper statement of the law – of course, the defendant is not required – neither defendant is required to testify. Go ahead. |
| State: | Mr. Carroll's right to not testify is his absolute right, and you cannot hold his silence against him. And nobody knows if he's going to testify until the trial comes to that point. |

The record is clear that the prosecutor commented on the appellants' right to remain silent. However, the application of the *Judge* factors leads us to conclude that the prosecutor's comments do not require reversal. In context, the prosecutor was trying to explain why the State presented its case as it did — not trying to infer guilt upon the appellants because of their silence. In addition, the jury was thoroughly instructed on the appellants' right not to testify and on the State's burden of proof. Moreover, the case against the appellants was particularly strong, and there were no other instances of arguably improper conduct that would compound the effect of this one. Therefore, we conclude that the comments did not have a prejudicial effect on the verdict and were harmless beyond a reasonable doubt. *See Thornton*, 10 S.W.3d at 235.

## CONCLUSION

Based on our review of the record, the applicable law, and the arguments of the parties, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE