IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 2, 2017 Session

**STATE OF TENNESSEE v. DEWAYNE JONES**

**Appeal from the Criminal Court for Shelby County**
**No. 13-02928     J. Robert Carter, Jr., Judge**

_____

**No. W2016-00074-CCA-R3-CD**

_____

The Defendant, Dwayne Jones, was convicted by a Shelby County Criminal Court jury of aggravated assault, a Class C felony, and was sentenced by the trial court as a Range I, standard offender to five years of incarceration.  The trial court also imposed the $7000 fine assessed by the jury.  The Defendant raises three issues on appeal:  whether the trial court lacked subject-matter jurisdiction due to the Defendant's pending petition to remove the case to federal court, pursuant to 28 U.S.C. § 1443; whether the evidence is sufficient to sustain his conviction because the proof did not show that the victim suffered serious bodily injury; and whether the trial court erred in imposing the $7000 fine without making any specific findings of fact regarding the Defendant's financial circumstances and ability to pay.  Following our review, we affirm the judgment of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR. and J. ROSS DYER, JJ., joined.

Lance R. Chism (on appeal) and John L. Dolan (at trial), Memphis, Tennessee, for the appellant, Dewayne Jones.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Kenya N. Smith and Carrie Shelton Bush, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS and PROCEDURAL HISTORY**

Shortly after midnight on May 21, 2012, Memphis Police Officer Leonard Bockhold, Jr. was booking the Defendant into the Shelby County Jail when the Defendant suddenly hit the officer in the face, knocking him to the floor unconscious and fracturing his jaw and cheekbones. On June 25, 2013, the Defendant was indicted by the Shelby County Grand Jury for the aggravated assault of Officer Bockhold. On August 19, 2014, the Defendant filed a petition in the United States District Court for the Western District of Tennessee to have his criminal prosecution in this case and in his other pending criminal cases transferred to federal court, pursuant to 28 U.S.C. § 1443. The Defendant alleged various, mostly incomprehensible grounds in his petition.

The federal district court ordered the Defendant to file an amended petition bearing his personal, notarized signature rather than that of the non-lawyer who had signed the original petition on his behalf. The Defendant apparently filed an amended petition on December 22, 2014, as well as a series of motions and pleadings. The Defendant was tried before a Shelby County Criminal Court jury from September 15-16, 2015, was convicted of aggravated assault, was subsequently sentenced by the trial court to five years in the county workhouse, and ordered to pay the $7000 fine that had been assessed by the jury. Judgment was entered on October 16, 2015.

On September 30, 2016, the federal district court entered an order remanding the case to the Shelby County Criminal Court on the basis that it lacked subject-matter jurisdiction over the Defendant's state criminal cases. The federal district court noted that the category of cases that are removable under 28 U.S.C. § 1443(1) is narrow and that none of the claims the Defendant raised in his removal petition -- of false arrest, false imprisonment, and violation of his right to due process -- involved the denial of a right guaranteed under a law conferring a right to racial equality. The federal district court also noted in a footnote that the Defendant had "not properly removed his three criminal cases to federal court" because his "largely incomprehensible" notice of removal was both untimely and failed to meet the procedural requirements of the removal statute. However, the court, citing Page v. City of Southfield, 45 F.3d 128, 133 (6th Cir. 1995), also observed that it was unclear whether it could remand the case based solely on those procedural deficiencies.

The State's first witness at the Defendant's state criminal trial was Sergeant Alisa Styles of the Shelby County Sheriff's Department, the custodian of the jail records, who identified a May 21, 2012 videotape of the intake processing area of the jail, which, she said, showed an inmate being brought into the sally port by a Memphis police officer, the inmate turning around and striking the officer approximately four times in the face after the officer removed his handcuffs, the officer falling to the ground, and the inmate then being "taken down" by two other Memphis police officers and two Shelby County

Sheriff's Department deputies.  The videotape was admitted as an exhibit and published to the jury.

Memphis Police Officer Leonard Bockhold described his late-night traffic stop of the Defendant on May 20, 2012, for passing other vehicles in the turn only lane, the Defendant's belligerent and uncooperative behavior during the stop, and the Defendant's refusal to sign the traffic citation he issued him for driving in an emergency lane and violation of the financial responsibility law, which led to the Defendant's arrest.  Officer Bockhold testified that when they reached the intake processing area of the jail, his partner, Officer Cedric Chalmers, went to the window to get the paperwork while he began removing the Defendant's handcuffs.  He stated that after he had removed one cuff, the Defendant began turning around and arguing with him.  The Defendant finally stopped trying to spin around, and Officer Bockhold was able to remove the second handcuff.  He had just told the Defendant, who was "steadily just mouthing off," to sit down when the Defendant suddenly hit him.

Officer Bockhold testified that "everything went white and then everything went black."  When he regained consciousness, he at first did not know where he was but eventually realized he was lying on the floor in the sally port.  He identified his hospital medical records, which were admitted as an exhibit and which reflect that he sustained an open wound of the lip, a concussion with loss of consciousness, and closed fractures of the malar and maxillary bones.  He said he experienced extreme pain in his jaw and head, especially for the first two days following the assault.  He rated his level of pain as a "ten" on a scale of one to ten and testified that, for the first two days following the assault, he was unable to lie down or sleep and experienced such extreme vertigo that he repeatedly vomited.  He further testified that he continued to experience vertigo to the present day and that his physician had informed him it would likely be an ongoing problem due to the damage caused to his inner ear.

Officer Cedric Chalmers of the Memphis Police Department described the Defendant's uncooperative behavior during the traffic stop, including his refusal to sign the traffic ticket, his instruction to his female passenger not to obey Officer Bockhold's directions, and his attempt to roll up his driver's window on Officer Bockhold's arm.  Officer Chalmers testified that the Defendant was verbally belligerent after he was handcuffed and placed under arrest, shouting that he was an attorney and knew the law.  Officer Chalmers stated that when they reached the jail, he went up to the window to begin the booking process while Officer Bockhold removed the Defendant's handcuffs.  He recalled that Officer Bockhold asked the Defendant to sit down and that the Defendant refused, saying that he did not have to do so.  Officer Bockhold then took hold of the Defendant's left arm in an attempt to escort the Defendant to the seat.  At that point, the Defendant raised his arm and struck Officer Bockhold.  Officer Chalmers

testified that he responded by going over and doing "what [he] had to do" to take the fighting Defendant into custody. In the meantime, Officer Bockhold was lying unconscious on the floor behind Officer Chalmers and the other law enforcement officers who were struggling with the Defendant.

Officer Jacques Pope of the Memphis Police Department testified that he was at the intake processing window when the two officers brought in the Defendant. He saw Officer Bockhold remove the Defendant's handcuffs and heard him ask the Defendant to take a seat, which the Defendant refused to do. When Officer Bockhold again asked the Defendant to sit down, the Defendant turned around and struck the officer approximately three times, knocking him unconscious. At that point, Officer Pope assisted Officer Chalmers in taking the Defendant into custody, while his prisoner, who had been seated in the sally port, attempted to render aid to Officer Bockhold.

Deputy Robert Henderson of the Shelby County Sheriff's Department testified that he was working in the fugitive office, directly adjacent to the sally port, around 12:30 a.m. on May 21, 2012, when he heard an argument between an officer and a prisoner. Anticipating an "incident" based on the prisoner's agitated tone, he put away his weapon and chemical spray in preparation for entering the sally port,[1] looked through the window, and saw the Defendant hit Officer Bockhold "pretty hard." Deputy Henderson testified that the Defendant struck the officer so hard, in fact, that the officer appeared to have been knocked unconscious before he even hit the ground. Deputy Henderson reacted by running into the sally port, jumping on top of the Defendant, and handcuffing him.

The Defendant elected not to testify and rested his case without presenting any evidence. Following deliberations, the jury found him guilty of aggravated assault and assessed a $7000 fine. At the sentencing hearing, the trial court noted that the Defendant had no prior criminal convictions. It also noted that the Defendant had refused to cooperate with the preparation of his presentence report and that the case was unique in that the entire incident had been captured on the jail's surveillance videotape. The court applied as an enhancement factor the fact that the Defendant committed the offense against someone whom the Defendant knew to be a police officer acting in his official duties. See Tenn. Code Ann. § 40-35-114(19). Finding no applicable mitigating factors, the court sentenced the Defendant as a Range I, standard offender to five years and imposed a $7000 fine. Because of the Defendant's pending charges for a separate assault, rape of a child, incest, aggravated sexual battery, and retaliating against a witness, the trial court denied the Defendant's request for probation.

---

[1] Deputy Henderson testified that weapons are not allowed in the sally port.

-4-

## ANALYSIS

### I. Jurisdiction of Criminal Court

The Defendant first contends that the state criminal court lacked jurisdiction over his case because of his pending application to transfer the case to the federal district court, pursuant to 28 U.S.C. § 1443. The State argues that under the controlling authority in the Sixth Circuit, the removal statute was never properly invoked because the Defendant's removal petition was untimely and that the trial court, thus, retained complete jurisdiction over the case. In the alternative, the State argues that the trial court retained jurisdiction to proceed with the trial and verdict, but not to enter judgment, because the federal removal statute allows state court proceedings to continue until the federal court rules on the removal petition. The State asserts that in such a case, where the trial court erroneously and prematurely entered a judgment, this court lacks jurisdiction and the case should, therefore, be remanded to the trial court for entry of a valid judgment.

The federal statute cited by the Defendant provides in pertinent part that a criminal prosecution commenced in a state court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal rights of citizens of the United States, or of all persons within the jurisdiction thereof;

> (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

28 U.S.C. § 1443. The procedural requirements for a petition to remove a criminal case to federal court are as follows:

> **(a) Notice of removal**. -- A defendant or defendants desiring to remove any criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such prosecution is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

**(b) Requirements. – (1)** A notice of removal of a criminal prosecution shall be filed not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

**(2)** A notice of removal of a criminal prosecution shall include all grounds for such removal. A failure to state grounds that exist at the time of the filing of the notice shall constitute a waiver of such grounds, and a second notice may be filed only on grounds not existing at the time of the original notice. For good cause shown, the United States district court may grant relief from the limitations of this paragraph.

**(3)** The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded.

**(4)** The United States district court in which such notice is filed shall examine the notice promptly. If it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand.

**(5)** If the United States district court does not order the summary remand of such prosecution, it shall order an evidentiary hearing to be held promptly and, after such hearing, shall make such disposition of the prosecution as justice shall require. If the United States district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, which shall proceed no further.

**(c) Writ of habeas corpus.** – If the defendant or defendants are in actual custody or process issued by the State court, the district court shall issue its writ of habeas corpus, and the marshal shall thereupon take such defendant or defendant's into the marshal's custody and deliver a copy of the writ to the clerk of such State court.

28 U.S.C. § 1455.

The Defendant, who concedes that his removal petition was untimely, contends that there is a split of authority on whether a late-filed petition divests the state court of

jurisdiction. He relies on State v. Cegielski, 368 N.W.2d 628 (Wis. 1985), to argue that the federal court automatically assumed jurisdiction over his case at the moment he filed his petition. Going beyond the holding in Cegielski, the Defendant further "submits that the state court did not have jurisdiction to take him to trial, to sentence him, or to enter the uniform judgment sheet since Defendant's removal petition was pending in federal court when each of the above-noted events occurred." Asserting that a jury's guilty verdict "is equivalent to an entry of a judgment of conviction," the Defendant cites the language of the removal statute, "except that a judgment of conviction shall not be entered," see 28 U.S.C. § 1455(b)(3), to argue that the statute "plainly communicates to the reader that a defendant shall not be tried by a jury while his removal petition is pending in federal court." Following this logic, the Defendant contends that his "trial and sentence were a legal fiction" and, therefore, requests this court to "declare that his guilty verdict and sentence are void."

We find the Defendant's argument -- that a "plain" reading of the removal statute indicates that the trial court was without jurisdiction to even try the Defendant -- to be a substantial stretch. Regardless, we need not even address the Defendant's argument on this point, as we agree with the State that under the controlling authority of the Sixth Circuit, the Defendant's untimely petition for removal was insufficient to invoke the removal statute and that the state court, therefore, retained complete jurisdiction over the Defendant's case. In Seaton v. Jabe, 992 F.2d 79, 81 (6th Cir. 1993), which analyzed the ramifications of untimely removal petitions under the predecessor statute, the Sixth Circuit concluded that a defendant's late filing of his removal petition in a criminal case, without leave of the federal court, meant that the petition was never properly filed with the district court and that the state criminal court was never divested of jurisdiction over the matter. The Seaton Court wrote:

> Section 1446 provides that a defendant, whether in a civil or criminal case, who seeks to remove his case to federal court must file a notice of removal (the removal petition) in the district court. 28 U.S.C. § 1446(a). In criminal prosecutions:

>> A notice of removal of a criminal prosecution shall be filed not later than thirty days after the arraignment in the State court, or at any time before trial, *whichever is earlier*, except that for good cause shown the United States district court may enter an order granting the petitioner leave to file the notice at a later time.

> 28 U.S.C. § 1446(c)(1) (emphasis added). Clearly, Seaton filed his removal petition beyond the time limits allowed by the statute, and his argument that

-7-

the petition was timely is without merit. We also agree with the district court that Seaton's late filing, without leave of court upon a showing of good cause, means that there was no viable removal petition before the federal court and, as a result, the state court was never divested of jurisdiction over the matter.

The removal statute provides that, in *civil* cases, once the removal petition is properly filed and notice is given, the entire case is transferred to federal court, and the state court is deprived of jurisdiction unless the federal court subsequently remands it. The strict time requirement for removal in civil cases is not jurisdictional; rather, "it is a strictly applied rule of procedure and untimeliness is a ground for remand so long as the timeliness defect has not been waived." Northern Illinois Gas Co. v. Airco Indus. Gases, 676 F.2d 270, 273 (7th Cir. 1982).

It is not true, however, that an untimely removal petition filed by a *criminal defendant* in federal court likewise means that the state court is without jurisdiction to enter a conviction unless there is a remand. Section 1446's procedural requirements for removal are very different for civil and criminal defendants. Unlike the procedural requirements for removal in civil cases, section 1446(c)(1) prohibits a late filing unless the federal court first grants the petitioner leave after the petitioner establishes "good cause." Thus, it follows that a late filing without leave of federal court is not a "properly" filed notice of removal, and the civil removal cases -- which hold that properly filed petitions automatically effect the removal and divest the state court of jurisdiction -- do not apply. We therefore agree with the district court and hold that in this criminal case, the state court retained jurisdiction, even to convict Seaton, because, in view of the late filing without leave of the federal court, the removal petition was never properly filed with the district court.

Seaton, 992 F.2d at 81 (emphasis added) (some citations and footnote omitted).

As the State points out, Page v. City of Southfield, 45 F.3d at 133, the case on which the federal district court relied in declining to dismiss the Defendant's untimely petition on purely procedural grounds, involved a civil, rather than a criminal, case. In that case, the Sixth Circuit concluded that the civil removal procedural statute, 28 U.S.C. § 1447, prohibited the district court from sua sponte dismissing the untimely filed petition. We agree with the State that Page, dealing with a civil case, is not in conflict with Seaton.

The State also correctly points out that Cegielski was decided by the Wisconsin Supreme Court, which falls within the jurisdiction of the Seventh Circuit, eight years prior to the Sixth Circuit's decision in Seaton, and that the Texas Court of Appeals recently relied on Seaton in its determination that a late-filed removal petition in a criminal case did not deprive the trial court of jurisdiction to enter a judgment. See Parrish v. State, 485 S.W.3d 86, 88-90 (Tex. App. 2015). Moreover, in an unreported case, the Sixth Circuit Court of Appeals in 2003 cited Seaton for the proposition that the district court properly dismissed a criminal defendant's petition to remove his Tennessee traffic citation case to federal court under 42 U.S.C. § 1983, because the petition was untimely. Jesse D. McDonald v. Tennessee, 79 Fed. Appx. 793, 794 (6th Cir. Oct. 28, 2003).

Therefore, relying on Seaton, we conclude that the Defendant's late-filed, incomprehensible removal petition was insufficient to properly invoke the removal statute and that the trial court retained jurisdiction to try the Defendant, to sentence him, and to enter the uniform judgment of conviction. Accordingly, the Defendant is not entitled to relief on the basis of this issue.

## II. Sufficiency of the Evidence

The Defendant next contends that the evidence is insufficient to sustain his conviction. Specifically, he argues that there was insufficient proof from which the jury could find beyond a reasonable doubt that the serious bodily injury element of the offense was satisfied. The State disagrees, arguing that the victim's medical records and testimony about his severe pain following the assault were sufficient to satisfy the serious bodily injury element of aggravated assault. We agree with the State.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To sustain the conviction for aggravated assault, the State had to show beyond a reasonable doubt that the Defendant knowingly committed an assault of Officer Bockhold, as defined in Tennessee Code Annotated section 39-13-101(a)(1), and that the assault resulted in serious bodily injury to the officer. See Tenn. Code Ann. § 39-13-102(a)(1)(A)(i). Serious bodily injury is defined as bodily injury involving: "(A) [a] substantial risk of death; (B) [p]rotracted unconsciousness; (C) [e]xtreme physical pain; (D) [p]rotracted or obvious disfigurement; (E) [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty; or (F) [a] broken bone of a child who is twelve (12) years of age or less[.]" Id. § 39-11-106(a)(34).

In State v. Farmer, 380 S.W.3d 96 (Tenn. 2012), the Tennessee Supreme Court concluded that a victim's hospital records, alone, were insufficient for the jury to find that he experienced the "extreme physical pain" required to satisfy the serious bodily injury element:

> [I]n the instant case, the evidence does not support a finding that [the victim's] injury involved a degree of pain that would warrant its inclusion among the other enumerated portions of the definition of "serious bodily injury." Although [the victim] testified that he experienced pain after realizing he had been shot, hospital records do not classify his pain as

"extreme" but rather as "mild" to "moderate." [The victim] was given a prescription for pain medication before leaving the hospital, but he never testified as to the degree of pain he experienced. A jury could not reasonably infer from [the victim's] testimony, the hospital records, and the nature of his injury that [his] wound involved extreme pain.

Id. at 101-02 (footnote omitted).

Here, by contrast, the victim specifically testified that he experienced extreme pain, which he rated as a "ten" on a scale of one to ten, following his assault. He further testified that his pain was such that he was unable to lie down or sleep for the first two days following the assault and that he experienced such extreme vertigo that he repeatedly vomited. "[T]he subjective nature of pain is a question of fact to be determined by the trier of fact[.]" State v. Eric A. Dedmon, No. M2005-00762-CCA-R3-CD, 2006 WL 448653, at *5 (Tenn. Crim. App. Feb. 23, 2006), no perm. app. filed. Viewed in the light most favorable to the State, the victim's testimony about his pain was sufficient for a rational trier of fact to find beyond a reasonable doubt that he experienced extreme physical pain as a result of the Defendant's striking him in the face and, thus, suffered serious bodily injury. Accordingly, we conclude that the evidence is sufficient to sustain the Defendant's conviction for aggravated assault.

## II. Imposition of $7000 Fine

Lastly, the Defendant contends that the trial court erred by imposing the $7000 fine fixed by the jury because it did not make any specific findings regarding the appropriateness of the amount of the fine. The State points out that the Defendant raised no complaint about the fine at his sentencing hearing and refused to cooperate with the preparation of his presentence report. The State, thus, argues that the trial court cannot be found to have abused its discretion by not reviewing an issue for which no proof or complaint was raised by the Defendant. We, again, agree with the State.

We review a trial court's imposition of a fine, which is part of a defendant's sentence, under an abuse of discretion standard. See State v. Bryant, 805 S.W.2d 762, 727 (Tenn. 1991); see also State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). The amount of any fine should be based upon the principles of sentencing, including "prior offenses, potential for rehabilitation, mitigating and aggravating circumstances, and other matters relevant to an appropriate sentence." Bryant, 805 S.W.2d at 765-66. "A defendant's ability to pay is a factor in the establishment of fines." State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996); see Tenn. Code Ann. § 40-35-207(a)(7) (2014) (requiring upon the trial court's request that the presentence report include information to "assist the court in imposing a fine"). "[A]lthough the defendant's ability

to pay a fine is a factor, it is not necessarily a controlling one." <u>State v. Marshall</u>, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993).  Moreover, "a significant fine is not automatically precluded just because it works a substantial hardship on a defendant -- it may be punitive in the same fashion incarceration may be punitive." <u>Id.</u>

As the State points out, the Defendant raised no objection and made no argument against the trial court's imposition of the $7000 fine at sentencing.  He also did not raise the issue in his motion for new trial or argue it at the motion for new trial hearing. Moreover, the Defendant refused to cooperate with the preparation of his presentence report, providing no information about his background, including his financial resources or ability to pay.  Instead, the Defendant, at the sentencing hearing, complained about his counsel and made confusing statements about the violation of the "peace treaty" of the "indigenous people" and not being tried by a "blue-ribbon jury."  As such, we cannot conclude that the trial court abused its discretion in imposing the $7000 fine assessed by the jury.  We, therefore, affirm the sentencing as imposed by the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE