FILED

09/17/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2019 Session

**STATE OF TENNESSEE v. CHARLES EUGENE DARVIN, JR.**

**Appeal from the Criminal Court for Davidson County**
**No. 2015-B-1456     Seth W. Norman, Judge**

_____

**No. M2018-01669-CCA-R3-CD**

_____

Following a bench trial before the Davidson County Criminal Court, the Defendant-Appellant, Charles Eugene Darvin, Jr., was convicted as charged of especially aggravated robbery, see Tenn. Code Ann. §39-13-403, a Class A felony.  The trial court later accepted the agreement of the parties to sentence the Defendant to a term of fifteen years' imprisonment, to be served at 100%.  The sole issue presented for our review is whether the evidence is sufficient to support the element of serious bodily injury as required to establish the offense.  Upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

G. Kline Preston, IV, Nashville, Tennessee, for the Defendant-Appellant, Charles Eugene Darvin, Jr.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Emily R. Todoran, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On March 21, 2015, the Defendant forced his way into the apartment of Calvin Davis, the victim, and demanded the victim's money.  When the victim refused, the Defendant brutally beat the victim with a gun and stole approximately $72 from him.  As a result of the attack, the victim spent nearly three days in the hospital, had permanent scarring to his lip and atop his head, and had to receive eighteen staples to his head.  The Defendant, a neighbor of the victim's, was later arrested and charged with the above

offense. The following proof was adduced at the February 12, 2018, one-day trial in this matter.

Prior to the offense, the victim had suffered a stroke, which affected his memory. The victim was nevertheless able to recall that on the day of the offense he went to a party at the apartment of his roommate's girlfriend. He had just gotten paid and took approximately $130 with him to the party. While at the party, the victim pulled out a "wad" of money from his pocket to give his roommate's girlfriend as a gift. He put the rest of his money back in his pocket and eventually left the party. The victim testified that he knew the Defendant prior to the offense, that the Defendant lived in the same apartment building, and that the Defendant was standing outside the apartment when the victim left the party. The victim walked back to his apartment, but he was unaware the Defendant had followed him. The victim said the Defendant knocked on the door and told the victim to open the door. The Defendant then forced his way into the apartment and demanded the victim's money. The victim testified that he told the Defendant he did not have any money and that the Defendant commenced to "beating [the victim] on the head with a pistol and kick[ing] [the victim] all in the face. [The Defendant] put the gun in [the victim's] mouth, busted [his] head, busted [his] lip, kick[ed] [the victim] hard in the back and everything. . . . [The victim] had eighteen staples in [his] head[.]" The victim said the gun was black, and the Defendant took approximately $72 from him. The victim explained that the Defendant continued to beat him with the gun even after he took his money and that the attack lasted approximately twenty minutes. When the victim's roommate returned to the apartment, he called the police.

Regarding the victim's injuries, the victim said that he had difficulty walking without a cane and, at the time of trial, he still experienced extreme pain for which he took medication. The victim stayed in the hospital for two and a half days and had permanent scarring on the inside of his lip and atop his head. The victim "positive[ly]" identified the Defendant at trial as the perpetrator of the offense.

The victim's roommate, John Paul Harper, testified consistently with the testimony of the victim. He was living with the victim at the time of the offense and confirmed that on that day he had gone to a party with the victim to celebrate his girlfriend's birthday. At that time, he knew the Defendant only by his first name and explained that, although the Defendant was at the same party, the Defendant had not been invited. After the party, Harper observed the Defendant "banging" on the victim's apartment door. He identified the Defendant at trial as the person he saw "banging" on the victim's door. He said the Defendant shut the wooden door, and he did not initially observe any commotion. He then heard a "big boom" and went to the victim's apartment after approximately twenty minutes. He said the door was blocked and difficult to open because the victim was "laying on the floor bloody and beaten to death. He looked like

he was pistol whipped and chocked out." Harper said the victim was barely breathing, and he called the police. The 911 tape of his call was admitted into evidence and played for the jury.

On cross-examination, Harper explained he was approximately ten to twenty feet away from the door at the time the Defendant barged into the victim's apartment. He said that as the Defendant entered the apartment, he heard the Defendant tell the victim to, "Sit you[r] ass down, n-----." The Defendant then shut the door. He heard a commotion after the Defendant entered the apartment, but he did not immediately interfere because he "would have got a piece of the rough-edge action too." He confirmed that he paid the victim rent to live with him; however, the amount had changed since the offense.

Officer Michael Brooks of the Metro Nashville Police Department (MNPD) testified that he was the first officer to respond to the instant offense. He spoke with the victim's roommate who showed him where the victim was located. Officer Brooks also confirmed that the victim's roommate provided him with the Defendant's first name and told him that the Defendant stayed with his sister in a nearby apartment. Officer Brooks confirmed that the victim had extensive injuries and called medical personnel. Officer Brooks further confirmed that the victim provided him with the Defendant's first name as the perpetrator of the offense.

Detective Gary Shannon of the MNPD met the victim a few days after the offense and took photographs of his injuries. Detective Shannon provided three photographs of the victim's injuries at trial, all of which were admitted into evidence. The photographs showed staples to the victim's head, trauma to his forehead and side of his face, his eyeball and his lip. Detective Shannon went to the nearby apartment which had been previously identified as belonging to the Defendant's sister, but the occupants refused to speak with him and advised him only that the person he wanted to speak to was "Charles Darvin." After receiving the Defendant's full name, Detective Shannon comprised two photospreads that were eventually shown to the victim and his roommate. Both individuals positively identified the Defendant as the perpetrator of the offense. The photospreads were admitted into evidence at trial. Detective Shannon testified that the victim and his roommate were separated during the identification procedure. Upon further investigation, Detective Shannon requested a warrant for the Defendant's arrest. When the Defendant was arrested and taken into custody, he told Detective Shannon that "he had been chased all night by unknown people for what he had done."

Based on the above proof, the trial court convicted the Defendant as charged of especially aggravated robbery. On June 20, 2018, the trial court accepted the agreement of the parties to sentence the Defendant to a term of fifteen years' imprisonment, to be

served at 100%. On August 17, 2018, the trial court denied the Defendant's motion for new trial. After filing a timely notice of appeal, the case is now properly before this court.

## ANALYSIS

The Defendant challenges the evidence supporting the element of serious bodily injury. The extent of his argument on appeal is that the victim's injuries were "superficial, non-life-threatening wounds" and that there was no medical proof presented at trial. In response, the State argues, and we agree, that the proof was sufficient to support the element of serious bodily injury in order to sustain the conviction of especially aggravated robbery.

In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). A finding of guilt by the trial court shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim.

- 4 -

App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

In order to sustain a conviction of especially aggravated robbery, the State was required to establish that the Defendant committed a robbery that was "(1) [a]ccomplished with a deadly weapon; and (2) [w]here the victim suffers serious bodily injury." Tenn. Code Ann. §39-13-403(a)(1), (2); see also State v. Farmer, 380 S.W.3d 96, 100-01 (Tenn. 2012). An especially aggravated robbery requires proof of both elements: use of a deadly weapon and serious bodily injury to the victim. Farmer, 380 S.W.3d at 100 (citing Stewart v. State, 33 S.W.3d 785, 792 (Tenn. 2000)). A robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. §39-13-401(a). A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Id. §39-14-103(a).

There is no dispute that the Defendant used a deadly weapon during the robbery; the only issue is whether the victim suffered "serious bodily injury" during the attack. "Bodily injury" is defined to include "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. §39-11-106(a)(2). "Serious bodily injury" is defined as "bodily injury that involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; [or] (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]" Tenn. Code Ann. §39-11-106(a)(34). The distinction between "bodily injury" and "serious bodily injury" is generally a question of fact for the jury and not one of law. State v. Barnes, 954 S.W.2d 760, 765-66 (Tenn. Crim. App. 1997).

Viewing the evidence in the light most favorable to the State, we conclude that the evidence is sufficient to support the element of serious bodily injury as required for the offense of especially aggravated robbery. As an initial matter, we acknowledge, as observed by the Defendant, that no medical records were admitted into evidence to support the element of serious bodily injury. Medical records indeed may be helpful in evaluating the relative likelihood of death or other complicated questions of medicine; however, such records are not necessary to establish whether the victim had a permanent

scar or the degree of pain experienced by a victim. See e.g., State v. Vaughn, No. W2016-00131-CCA-R3-CD, 2016 WL 7102748, at *7 (Tenn. Crim. App. Dec. 6, 2016), appeal granted, cause remanded (Nov. 17, 2017); State v. Beauregard, No. M2012-02312-CCA-R3CD, 2013 WL 6047026, at *15 (Tenn. Crim. App. Nov. 14, 2013).

In support of serious bodily injury, the record shows that the State relied upon (1) substantial risk of death based on the seriousness of the victim's injuries, (2) extreme physical pain as testified to by the victim, and (3) protracted or obvious disfigurement as evidenced by the victim's testimony and the photographs taken at the time of the offense. We need only consider one of the factors for our review. This court has consistently held that a scar is sufficient to support the element of serious bodily injury. See State v. Deonte Matthews, No. M2010-00647-CCA-R3-CD, 2012 WL 5378046, at *4 (Tenn. Crim. App. Oct. 31, 2012) (citing cases in which this court held that a scar constitutes protracted or obvious disfigurement for the purpose of establishing serious bodily injury same); State v. Richard Dale Capps, No. M2010-02143-CCA-R3-CD, 2012 WL 3800848, at *7 (Tenn. Crim. App. Sept. 4, 2012) (holding that the victim's scar from a two-inch laceration on his ear was sufficient to establish serious bodily injury), perm. app. denied (Tenn. Feb. 13, 2013); State v. Anthony D. Forster, No. M2002-0008-CCA-R3-CD, 2011 WL 1431980, at *10 (Tenn. Crim. App. April 12, 2011) (concluding that the victim's scar, which began in the middle of the bridge of her nose and ended at her lip, was sufficient to establish the element of serious bodily injury). As a result of the robbery, the victim suffered permanent scarring on his head and inside of his lip and photographs of the same were admitted into evidence at trial. Based on this evidence, a reasonable juror could have found the statutory element of serious bodily injury as required to establish the offense of especially aggravated robbery. The Defendant is not entitled to relief.

## CONCLUSION

Based on the above authority and analysis, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE